HENRY WOODROW BARNES, JR., PETITIONER v. JAMES DONALD WELLS, RESPONDENT, FOR THE ADOPTION OF DAWN MARIE BARNES

No. COA03-997

(Filed 3 August 2004)

## 1. Jurisdiction— personal—not waived by motion to reopen adoption file—no general appearance

Respondent did not waive his personal jurisdiction objection to his daughter's adoption by moving that the trial court reopen the adoption file and transfer the matter from the Clerk of

Superior Court. Respondent did nothing that could be considered a general appearance before entry of the order now challenged; if the court lacked personal jurisdiction when it entered the order, subsequent actions could not retroactively supply jurisdiction.

## 2. Adoption; Process and Service— motion to reopen adoption—prior abandonment proceeding—service by publication

There was no abuse of discretion in the denial of a natural father's Rule 60 motions for relief from the adoption of his daughter by the mother's new husband. The abandonment proceeding which preceded the adoption (so that respondent was not a necessary party to the adoption) was based on service by publication. The publication requirements were satisfied because petitioner first attempted service by certified mail at the respondent's admitted address in Virginia, with the letter addressed both to respondent and in care of the person with whom he lived.

## 3. Jurisdiction— minimum contacts—divorce and child custody proceedings

There were sufficient minimum contacts for the court to obtain personal jurisdiction over respondent in an abandonment proceeding, which preceded an adoption, where respondent lived in North Carolina for only one month but had other contacts with the state through his divorce proceeding and his daughter's custody matters.

Judge GEER concurring.

Appeals by petitioner and respondent from order filed 26 March 2003 by Judge John R. Jolly, Jr. in Chatham County Superior Court. Heard in the Court of Appeals 21 April 2004.

*Jones, Martin, Parris & Tessener Law Offices, P.L.L.C., by Sean A.B. Cole, for petitioner-appellant.*

*Glenn, Mills & Fisher, P.A., by Carlos E. Mahoney, for respondent-appellant.*

BRYANT, Judge.

Henry Woodrow Barnes, Jr. (petitioner) and James Ronald Wells (respondent) both appeal an order filed 26 March 2003 denying respondent's motion for relief from an order entered 25 October 1979

that allowed petitioner to adopt respondent's natural daughter. Respondent and Donna Jarrett (Jarrett) were married in Blair, Virginia on 26 March 1970. On 11 October 1970, Dawn Marie was born to the marriage. Following Dawn Marie's birth, the family moved to Fort Bragg, North Carolina while respondent was engaged in military service. Sometime in 1971, the family moved back to Virginia.

In either late 1974 or early 1975, respondent and Jarrett separated. Following their separation, Jarrett moved back to North Carolina and began living with petitioner.

On 13 October 1975, Jarrett obtained a divorce from respondent in Mecklenburg County, North Carolina. Custody of Dawn Marie was placed with Jarrett. Respondent did not appear at the divorce proceeding. On 24 January 1976, Jarrett married petitioner in York, South Carolina, and the family moved to Chapel Hill, North Carolina.

Sometime in late 1977, respondent came to North Carolina, picked-up Dawn Marie, and returned with the child to Danville, Virginia. On 7 December 1977, respondent filed a petition for custody of Dawn Marie in Danville, Virginia. On 8 December 1977, Jarrett contested the petition by filing a similar petition for custody in Danville, Virginia. A custody hearing was held on 8 December 1977, and respondent was awarded temporary custody. A permanent custody hearing was scheduled for 31 January 1978. Shortly after the 8 December 1977 hearing, respondent returned Dawn Marie to the physical custody of Jarrett and petitioner in North Carolina. On 16 December 1977, respondent dismissed his petition for custody.

On 26 September 1978, petitioner filed a petition for the adoption of Dawn Marie in Chatham County, North Carolina. Jarrett signed a consent for adoption, and also filed a petition alleging respondent's abandonment of Dawn Marie. During this time, respondent was living with his grandmother in Danville, Virginia.

The clerk of superior court of Chatham County attempted to serve notice on respondent, via certified mail with return receipt requested, advising that a court date had been set to determine whether abandonment had occurred. Petitioner also attempted to serve notice of the adoption proceeding on respondent via certified mail with return receipt requested. The certified mail was not successfully delivered; thereafter, petitioner provided service by publication in the Danville newspaper. Notice was published for four days in April 1979. On 14 May 1979, Jarrett and petitioner's attorney filed an

affidavit attesting that respondent's "whereabouts, dwelling house is unknown and there has been diligent but unsuccessful attempt to serve the party under paragraph c of Rule 4(j)(9)."

On 14 May 1979, a hearing was held before the clerk of superior court, at which Jarrett, petitioner, and their attorney were present. Respondent was not present and did not have an attorney present on his behalf. On the same date, the clerk issued an order of abandonment decreeing that respondent had abandoned Dawn Marie and that a guardian ad litem should be appointed to represent her interests.

On 25 October 1979, the trial court entered an order allowing petitioner to adopt Dawn Marie. Respondent neither was a party to the adoption proceeding nor did he enter an appearance before the court.

On 28 May 2002, Dawn Marie died in an automobile accident. Following her death, respondent claims he discovered she had been adopted by petitioner in North Carolina. On 19 September 2002, respondent filed a motion for relief from the final order of adoption pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(b)(4) and (b)(6). Respondent's motion alleged that the final order for adoption was void because petitioner failed to properly serve respondent with notice of the proceedings, and the clerk of superior court lacked personal jurisdiction over respondent. On 28 October 2002, upon motion of respondent, these matters were transferred to the superior court division for hearing.

These matters came for hearing on 2 December 2002. On 26 March 2003, the trial court issued an order denying respondent's Rule 60(b)(4) and (b)(6) motion. Both petitioner and respondent assigned as error portions of the 26 March 2003 order.

---

The issues on appeal are whether the trial court erred in (I) concluding respondent did not waive his personal jurisdiction objection; and (II) denying respondent's Rule 60(b)(4) and (b)(6) motion for relief.

I

*Petitioner's Appeal*

[1] The trial court entered as conclusion of law 12:

Petitioner asserts that this matter is controlled by In re Blalock, 233 N.C. 493, 64 S.E.2d 848 (1951), and argues that Respondent

submitted to the [c]ourt's jurisdiction by moving the [c]ourt to open the adoption file, and by filing a Motion to Transfer from the Clerk to Superior Court. Accordingly, Petitioner moves the court to conclude that by these specific actions Respondent should be deemed to have waived all defects to personal jurisdiction. The court rejects Petitioner's argument that Blalock is controlling, and the motion is DENIED.

Petitioner argues the trial court erred in failing to conclude that respondent submitted to the trial court's jurisdiction by moving the trial court to open the adoption file and transfer the matter from the clerk of superior court. We disagree.

In *In re Blalock*, 233 N.C. 493, 64 S.E.2d 848 (1951), our Supreme Court examined whether a party waived his objection to improper service of process by filing a motion to dismiss based on personal and subject matter jurisdiction. The *Blalock* Court determined that by seeking dismissal based on lack of subject matter jurisdiction, the respondent made a general appearance, thereby waiving all objections to personal jurisdiction. *Blalock*, 233 N.C. at 504, 64 S.E.2d at 856. We agree with the trial court's conclusion that *Blalock* is inapplicable to the instant case. The actions deemed to be a general appearance in *Blalock* occurred prior to the entry of a final judgment. Here, respondent did nothing that could be considered a general appearance prior to the entry of the order now challenged.

Petitioner cites several cases in support of his argument that respondent waived his objections to personal jurisdiction. However, we find these cases are also inapplicable because respondent never made a general appearance before entry of the final order. *Bullard v. Bader*, 117 N.C. App. 299, 301-02, 450 S.E.2d 757, 759 (1994) (defendant made a general appearance before entry of judgment by submitting financial documents for consideration at his child support hearing); *Bumgardner v. Bumgardner*, 113 N.C. App. 314, 319, 438 S.E.2d 471, 474 (1994) (defendant made a general appearance before entry of judgment by appearing in court with counsel and participating in the hearing for absolute divorce); *Humphrey v. Sinnot*, 84 N.C. App. 263, 265-66, 352 S.E.2d 443, 445 (1987) (defendant made a general appearance by moving for change of venue before asserting lack of jurisdiction defenses); *Williams v. Williams*, 46 N.C. App. 787, 788-89, 266 S.E.2d 25, 27-28 (1980) (defendant made a general appearance before entry of judgment by his legal counsel's participation in an in-chambers conference with judge and opposing attorney on cus-

tody issue); *Swenson v. Thibaut*, 39 N.C. App. 77, 89-92, 250 S.E.2d 279, 287-89 (1978) (defendants made a general appearance by moving to disqualify plaintiff's counsel before filing lack of jurisdiction defenses). If the trial court lacked personal jurisdiction over respondent when it entered the order, actions subsequent to that order could not retroactively supply jurisdiction. Based on applicable case law, the trial court did not err in concluding that respondent did not waive his objection to personal jurisdiction. Accordingly, petitioner's assignment of error is overruled.

## II

### *Respondent's Appeal*

**[2]** Respondent argues that the trial court erred in denying his Rule 60(b)(4) & (b)(6) motion for relief from the adoption judgment. We disagree.

Pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(b),

On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:

. . . .

(4) The judgment is void;

. . . .

(6) Any other reason justifying relief from the operation of the judgment.

N.C.G.S. § 1A-1, Rule 60(b)(4), (b)(6) (2003). The standard of review for a trial court's ruling on a Rule 60(b) motion is abuse of discretion. *Coppley v. Coppley*, 128 N.C. App. 658, 663, 496 S.E.2d 611, 616 (1998). Abuse of discretion exists when "the challenged actions are manifestly unsupported by reason." *Blankenship v. Town and Country Ford, Inc.*, 155 N.C. App. 161, 165, 574 S.E.2d 132, 134 (2002). The trial court's findings regarding a Rule 60(b) motion are conclusive on appeal if supported by competent evidence. *Blankenship*, 155 N.C. App. at 165, 574 S.E.2d at 134-35.

In the instant case, an order was entered on 14 May 1979 adjudicating respondent had abandoned Dawn. The abandonment order was entered several months before the adoption order. The dispositive issue, therefore, is whether the abandonment proceeding of 14

May 1979 was proper. Since the adoption occurred in 1979, we analyze this case under the adoption statutes of Chapter 48 in effect at that time.

N.C. Gen. Stat. § 48-5 provides:

> (a) The court shall be authorized to determine whether the parent or parents of a child shall be necessary parties to any proceeding under this Chapter, and whether the consent of such parent or parents shall be required in accordance with G.S. 48-6 and 48-7.
>
> . . . .
>
> (e) If the parent, parents, or guardian of the person deny that an abandonment has taken place, this issue of fact shall be determined as provided in G.S. 1-273, and if abandonment is determined, then the consent of the parent, parents, or guardian of the person shall not be required.

N.C.G.S. § 48-5 (Supp. 1977) (repealed 1 July 1996).

According to the clear language of N.C. Gen. Stat. § 48-5, respondent would not be a necessary party to the adoption proceeding if the prior abandonment determination was properly entered. Respondent argues that service by publication, as was used in this case, was improper, and the court lacked jurisdiction over respondent to enter the abandonment order.

Before a party can resort to service by means of publication, other forms of service must first be attempted. N.C. Gen. Stat. § 1A-1, Rule 4(j)(9)(c) (1979). In 1979, this State's rules concerning service were as follows:

> a. Personal service may be made on any party outside this State by anyone authorized in section (a) of this rule and in the manner prescribed in this section (j) for service on such party within this State. Before judgment by default may be had on such service, there shall be filed with the court an affidavit of service showing the circumstances warranting the use of personal service outside this State and proof of such service in accordance with the requirements of G.S. 1-75.10(1).
>
> b. Any party subject to service of process under this subsection (9) may be served by mailing a copy of the summons and complaint, registered or certified mail, return receipt requested,

addressed to the party to be served. Service shall be complete on the day the summons and complaint are delivered to the address, but the court in which the action is pending shall upon motion of the party served, allow such additional time as may be necessary to afford the defendant reasonable opportunity to defend the action. Before judgment by default may be had on such service, the serving party shall file an affidavit with the court showing the circumstances warranting the use of service by registered or certified mail and averring (i) that a copy of the summons and complaint was deposited in the post office for mailing by registered or certified mail, return receipt requested, (ii) that it was in fact received as evidenced by the attached registered or certified receipt or other evidence satisfactory to the court of delivery to the addressee and (iii) that the genuine receipt or other evidence of delivery is attached.

c. A party subject to service of process under this subsection (9) may be served by publication whenever the party's address, whereabouts, dwelling house or usual place of abode is unknown and cannot with due diligence be ascertained, or there has been a diligent but unsuccessful attempt to serve the party under either Paragraph A or under Paragraph B or under Paragraphs A and B of this subsection (9).

N.C.G.S. § 1A-1, Rule 4(j)(9)(a), (b), (c) (Supp. 1979).

The trial court in the instant case stated in its judgment:

While the appellate courts of our state have consistently rejected using a checklist to determine whether due diligence was accomplished by a party before that party resorts to service of process by publication, in the instant case, due diligence was accomplished. Petitioner presented photocopies of the returned certified mail envelope originally used to attempt service on Respondent in Danville, Virginia. In spite of his admitted residence at the address in Danville where Petitioner sought to serve him, Respondent did not claim the certified letter.

As the trial court noted, this Court has refused to "make a restrictive mandatory checklist for what constitutes due diligence for purposes of permitting Rule 4(j)(9)(c) publication. Rather, a case by case analysis is more appropriate." *Emanuel v. Fellows*, 47 N.C. App. 340, 347, 267 S.E.2d 368, 372 (1980). In *Emanuel*, the plaintiff took several

steps to determine the defendant's location but could not find him. The defendant on appeal argued that the plaintiff should have interviewed the defendant's old neighbors, checked with government agencies, relatives, and the county clerk's office before proceeding with service by publication. *Emanuel*, 47 N.C. App. 340 at 347, 267 S.E.2d at 372. The Court, however, held the plaintiff had acted with due diligence when he contacted directory assistance and the defendant's insurer in an unsuccessful attempt to determine the defendant's address. *Id.*

In the instant case, petitioner attempted service by certified mail at respondent's admitted address, which letter was addressed not only to respondent but also in care of his grandmother.

Respondent relies on *Sink v. Easter*, 284 N.C. 555, 202 S.E.2d 138 (1974), as support for his assertion that service by publication was improper. However, there are critical distinctions between *Sink* and the instant case. In *Sink*, the plaintiff had notice that the defendant was living outside the United States, and was told by a person at the defendant's High Point residence that he was unsure when the defendant would be returning to the United States. The Court noted that "it thus appears that Plaintiff could have and therefore should have affected personal service of process by leaving copies of the Summons and Court Order at Defendant's High Point residence with a person of suitable age and discretion living there." *Sink*, 284 N.C. 555 at 558, 202 S.E.2d at 141. Unlike the defendant in *Sink*, however, respondent admitted living at the same address where petitioner attempted service. Moreover, petitioner attempted to serve either respondent or the person with whom he lived. The trial court found:

12. Attorney Levi attempted to serve Respondent by certified mail at the address where he was living in Danville, Virginia, in March, 1979. Respondent did not claim the certified mail sent to him, although it remained at the post office for several weeks.

. . . .

15. Petitioner and Donna Petty were each aware that Respondent was a resident of the Danville, Virginia address in question where they were attempting service; and that Respondent was not claiming his mail. Donna Petty had contacted Respondent and gave him actual notice of the proceedings, both before and after they occurred. Petitioner knew that Respondent was in the area where the notice of publication would run.

We conclude that the trial court correctly determined that due diligence was shown such that the service by publication requirements of Rule 4(j)(9)(a) to (c) were satisfied.

[3] In the instant case, we find the trial court was also presented with competent evidence to support a finding that the clerk of superior court had personal jurisdiction over respondent at the time of the entry of the abandonment order. The existence of personal jurisdiction is a question of fact for the trial court. *Hiwassee Stables v. Cunningham*, 135 N.C. App. 24, 27, 519 S.E.2d 317, 320 (1999). Our standard of review of an order "determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Wyatt v. Walt Disney World Co.*, 151 N.C. App. 158, 163, 565 S.E.2d 705, 708 (2002).

When personal jurisdiction exists pursuant to our long arm statute, the question collapses into the inquiry of whether the respondent "has the minimum contacts necessary to meet the requirements of due process." *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 671, 541 S.E.2d 733, 736 (2001). The requirements of due process are met when a respondent's contacts with the forum State are such that the maintenance of the suit would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 2d 95, 102 (1945). Factors to consider include the: "(1) quantity of contacts, (2) nature and quality of the contacts, (3) . . . source and connection of the cause of action to the contacts, (4) . . . interest of the forum state and (5) convenience to the parties." *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 114, 516 S.E.2d 647, 650 (1999). "The test for minimum contacts is not mechanical, but instead requires individual consideration of the facts in each case." *Id.* All factors "must be weighed in light of fundamental fairness and the circumstances of each case." *Corbin Russwin, Inc. v. Alexander's Hardware, Inc.*, 147 N.C. App. 722, 725, 556 S.E.2d 592, 595 (2001).

In the instant case, although respondent lived in the State for only one month, he had other contacts with the State. Specifically, respondent and Jarrett's divorce proceeding was held in Mecklenburg County, North Carolina. As part of the divorce proceeding, Jarrett was awarded custody of Dawn Marie. Dawn Marie resided in North Carolina. In addition, respondent removed Dawn Marie from the custody of Jarrett, took Dawn Marie to Virginia, where he petitioned the

State of Virginia for custody, dropped his petition for custody, and later returned Dawn Marie to Jarrett in North Carolina.

Respondent's contacts with North Carolina are sufficient to support the trial court's finding of personal jurisdiction. Therefore, the clerk of superior court had personal jurisdiction over respondent at the time the abandonment order was entered, thereby rendering the order valid. Once the valid abandonment order was entered, respondent was no longer a necessary party to the adoption proceeding. The adoption of Dawn Marie by petitioner remains valid. Respondent's assignment of error is overruled.

## Conclusion

Petitioner's assignment of error that the trial court erred in concluding respondent did not waive his personal jurisdiction objection is therefore overruled.

Respondent's assignment of error that the trial court erred in denying his Rule 60(b)(4) and (b)(6) motion for relief from the adoption judgment is therefore overruled.

The judgment of the trial court is affirmed.

Affirmed.

Judge ELMORE concurs.

Judge GEER concurs with a separate opinion.

GEER, Judge concurring.

I concur fully with the majority opinion, but write separately because I also believe that respondent is barred from challenging the 25 October 1979 adoption order. Respondent contends, the trial court assumed, and petitioner does not dispute that the statute in existence in 1979 controls: "No adoption may be questioned by reason of any procedural or other defect by anyone not injured by such defect, nor may any adoption proceeding be attacked either directly or collaterally by any person other than a biological parent or guardian of the person of the child." N.C. Gen. Stat. § 48-28(a) (repealed effective 1 July 1996).

In 1996, the General Assembly amended North Carolina's adoption laws, including N.C. Gen. Stat. § 48-28(a). The session law pro-

vided that "[t]his act becomes effective July 1, 1996. Any petition for adoption filed prior to *and still pending* on the effective date of this act shall be completed in accordance with the law in effect immediately prior to the effective date of this act." 1995 N.C. Sess. Laws 457 § 12 (emphasis added). While the petition for adoption at issue in this case was filed prior to the effective date of the amendments, it was not still pending as of the effective date. As a result, I believe the controlling law is the statute that went into effect on 1 July 1996: N.C. Gen. Stat. § 48-2-607 (2003).

Under N.C. Gen. Stat. § 48-2-607, a party to the adoption proceedings who does not appeal the order "shall be fully bound by the order." N.C. Gen. Stat. § 48-2-607(a). With respect to people who were not parties to the adoption proceedings, the statute provides: "No adoption may be attacked either directly or collaterally because of any procedural or other defect by anyone who was not a party to the adoption." *Id.* Parents or guardians are, however, given a limited additional right to challenge an adoption decree. N.C. Gen. Stat. § 48-2-607(c) provides in pertinent part:

> (c) A parent or guardian whose consent or relinquishment was obtained by fraud or duress may, within six months of the time the fraud or duress is or ought reasonably to have been discovered, move to have the decree of adoption set aside and the consent declared void. A parent or guardian whose consent was necessary under this Chapter but was not obtained may, within six months of the time the omission is or ought reasonably to have been discovered, move to have the decree of adoption set aside.

N.C. Gen. Stat. § 48-2-607(c).

In short, because the adoption order was entered in 1979, respondent could no longer move to set aside that order. This case demonstrates why there is a need for finality in adoptions. An order of adoption should not be subject to unraveling a quarter of a century after it was entered.