Ernest L. Mollohan ("the father") appeals from a judgment of the Colbert Circuit Court registering a North Carolina judgment that ordered him to pay $72,200 in child-support arrearages to Cynthia R. Mollohan Jelley ("the mother").
The father and the mother were divorced in the State of Washington in 1978. The mother was awarded custody of the parties' two children, and the father was ordered to pay child support in the amount of $100 per month per child.
In 1978, the mother moved with the children to North Carolina, the state in which she had grown up and in which her parents still resided. On February 19, 1980, she filed a complaint in the district court of New Hanover County, North Carolina, in which she sought to enforce the Washington divorce judgment insofar as it related to the father's child-support obligation.
The father hired a North Carolina attorney, who filed an answer and an affidavit on behalf of the father, both of which were ostensibly signed by the father.[1] The father denies that he signed those documents and also denies that he authorized the attorney to file either of those documents on his behalf. The father asserts that he hired the North Carolina attorney for the limited purpose of negotiating an agreement to acquiesce in the assertion of jurisdiction by the North Carolina court with respect to the matters of child custody and child support. He asserts that he was not aware that an action had actually been filed in the North Carolina court and that he did not authorize the North Carolina attorney to make an appearance on his behalf in the North Carolina action filed by the mother. While the North Carolina action was pending, the father's attorney withdrew from representation of the father on the ground that the father had not paid him and had not cooperated with the attorney. This withdrawal was approved by the North Carolina court.
Following a hearing in June 1980, at which the father did not appear and was not represented, the North Carolina court entered a judgment that found that the father had been properly served with the summons and complaint when the father's attorney accepted service, that the father had made a general appearance through the filing of an answer by his attorney, and that the court had jurisdiction over the parties and of the subject matter. The 1980 North Carolina judgment modified and superseded the 1978 Washington judgment of divorce, included a finding of a substantial change in circumstances sufficient to warrant an increase in child support, and increased the father's child-support obligation to $500 per month until both children reached the age of majority. The parties' younger child reached the age of majority on April 12, 1993.
The mother filed the present action in the Colbert Circuit Court on February 10, 2003, seeking to register the 1980 North Carolina judgment and to collect unpaid child support. Attached to the complaint was an affidavit of the mother alleging that the father had paid "no more than $20,000" in child support after July 1, 1980, and that the amount of the principal arrearage was $72,200. The father filed a motion to vacate the North Carolina judgment based on the lack of personal jurisdiction by the North Carolina court, improper service of process in the North Carolina action, payment in full, and the statute of limitations. *Page 210 
He also filed a motion to dismiss based on the mother's alleged unclean hands because she had allegedly violated the North Carolina judgment by taking the children out of state without necessary approvals.[2] The unclean-hands issue is not pursued in this appeal.
On April 29, 2003, the trial court held an ore tenus proceeding at which it heard testimony from both parties and from the parties' son. The trial court also received documents, including certified copies of certain pleadings from the Washington and North Carolina proceedings, canceled checks, payroll statements, and other financial records, and an arrearage calculation submitted by the mother.
The father testified that he did not receive notice of the June 1980 hearing in the North Carolina action until a week or so after it had been held. He admitted, however, that he received a copy of the North Carolina judgment in August 1980. He also admitted that he had taken no action to challenge, set aside, or modify the North Carolina judgment in the 23 years between the time it was entered and the filing by the mother of the present action in Alabama.
On August 21, 2003, the trial court entered an order that denied the father's motion to vacate the North Carolina judgment "based on the evidence submitted to this court," and it entered a judgment against the father in the amount of $72,200 in unpaid child support. The judgment did not set forth the trial court's basis for its calculation of the amount of the arrearage. The trial court denied the mother's request for interest on the arrearage.
Both parties filed timely postjudgment motions; both motions were denied. The father filed a timely appeal; the mother has not appealed the trial court's denial of interest on the arrearage and, therefore, any issue as to the propriety of this denial is not before us.
Because the trial court heard oral testimony, the ore tenus rule applies.
 "Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App. 1995). This `presumption of correctness is based in part on the trial court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor.' Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App. 1999). In addition, when the trial court's judgment does not make specific findings of fact, this court must assume that the trial court made those findings of fact necessary to support its judgment. Ex parte Bryowsky, 676 So.2d 1322 (Ala. 1996). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141 (Ala.Civ.App. 2000)."
Amaro v. Amaro, 843 So.2d 787, 790-91 (Ala.Civ.App. 2002).
The Alabama Uniform Interstate Family Support Act addresses the registration and enforcement of foreign child-support judgments.See Ala. Code 1975, §§ 30-3A-101 through -906. Section30-3A-605, Ala. Code 1975, provides for registration of a foreign child-support judgment. Section 30-3A-607(a), Ala. Code 1975, prescribes *Page 211 
various defenses to the registration and enforcement of a foreign child-support judgment, including the following: "(1) the issuing tribunal lacked personal jurisdiction over the contesting party [in this case, the father]."[3]
The father argues that the judgment entered by the North Carolina court in 1980 is void because the North Carolina court lacked personal jurisdiction over him. He also argues that the trial court erred in awarding $72,200 in arrearages because (a) the applicable statute of limitations is 10 years and, consequently, the mother was not entitled to recover for any arrearage that accrued prior to February 10, 1993, and (b) the evidence presented to the trial court does not support an award of $72,200 for the period from February 10, 1993, to the date of the trial court's judgment.
As to the father's argument concerning the North Carolina court's lack of jurisdiction over him, the father argues that the North Carolina judgment was void because the father did not have sufficient contacts with the State of North Carolina in 1980 when that judgment was entered and because the mother's complaint in that action was not properly served on him. The mother responds by noting, correctly, that the father's attorney filed an answer on the father's behalf without raising the jurisdictional defenses asserted by the father. Under North Carolina law, the authorized filing of an answer or general appearance without alleging jurisdictional defenses constitutes a waiver of those defenses. In re Blalock, 233 N.C. 493, 64 S.E.2d 848 (1951);Barnes v. Wells, 165 N.C.App. 575, 599 S.E.2d 585 (2004) (discussion of cases on waiver by general appearance); and M.G.Newell Co. v. Wyrick, 91 N.C.App. 98, 370 S.E.2d 431 (1988). The father responds to the mother's argument by contending that the filing of the answer by his North Carolina counsel was not authorized by him and, therefore, was ineffective to waive his jurisdictional defenses.
The issue whether the father authorized his attorney to appear in the North Carolina litigation and to file an answer on his behalf is a factual issue. Nonetheless, the resolution of this factual issue begins with a presumption under North Carolina law that the actions taken by an attorney on behalf of a client in appearing in a lawsuit and filing an answer on the client's behalf are authorized by the client. See Howard v. Boyce,254 N.C. 255, 263, 118 S.E.2d 897, 903 (1961) (consent judgment "is presumed to have been rightfully entered until the contrary is made to appear"); Guilford County v. Eller, 146 N.C.App. 579,581, 553 S.E.2d 235, 237 (2001) ("when an attorney acts on behalf of his client, a presumption arises that the attorney so acts within his authority and with the consent of the client"); Owensv. Voncannon, 251 N.C. 351, 354, 111 S.E.2d 700, 702 (1959) (consent by an attorney of record is presumed to be valid and the burden is on the one who challenges its validity); and Hendersonv. Wachovia Bank of North Carolina, 145 N.C.App. 621, *Page 212 551 S.E.2d 464 (2001) (reviewing the history of North Carolina jurisprudence as to cases involving allegations of unauthorized appearances of counsel and the presumption in North Carolina law that actions taken by an attorney on behalf of a client are authorized).Compare Kingvision Pay-Per-View, Ltd. v. Ayers, 886 So.2d 45,52 (Ala. 2003) (noting that an appearance by an attorney on behalf of a defendant in a lawsuit is presumed to be authorized and that "the presumption of the appearing attorney's authority to appear and the burden of proof on the challenging party
applies against a defaulted defendant . . . which denies that it has either received service of process or authorized the attorney to accept service, to make an appearance, or to waive objections to service and in personam jurisdiction").
In the context of the foregoing presumption, the Alabama trial court in this case had before it both an answer and an affidavit that bear the style of the 1980 North Carolina action and were apparently filed in that action. Both of those documents contain the ostensible signature of the father. The trial court was free to disbelieve the father's testimony that the signatures on those documents were not his. We also note that the father offered no explanation as to why his North Carolina attorney would have made an unauthorized appearance on his behalf in the North Carolina action, would have filed an answer and an affidavit on behalf of the father that he was not authorized to file, or would have gone so far as to cause the father's signature to be forged on those documents. We also note that the father's ostensible signature on those documents is accompanied by an apparent notarization.
In addition to the foregoing, an affidavit of the father's North Carolina counsel filed in the North Carolina action, upon which the father himself seems to rely to establish the limited nature of that counsel's authority, itself belies the father's position. Specifically, the affidavit of the North Carolina counsel stated, in part, that when a proposed consent decree between the father and the mother was rejected by the father
 "counsel for the [father] . . . informed the [father] that the case ha[d] been set for a full hearing before [the North Carolina] court, and that the remainder of the attorney's fees for counsel[4] must be paid; and that the [father] informed counsel that said fees would be paid on or before the 15th of May 1980."
(Emphasis added.)
Finally, the trial court's finding that the father's North Carolina counsel acted with authority is also supported by the father's failure to challenge the North Carolina judgment for approximately 23 years. The father admitted that he had received actual notice of the June 1980 hearing in the North Carolina action a week or so after it was held and that in August 1980 he also received a copy of the judgment resulting from that hearing. The trial court could have inferred from the fact that the father received a copy of the North Carolina judgment increasing the amount of his child-support obligation, and that he received a copy of that judgment on or about the time it was entered in 1980, and the fact that he failed to respond thereto at that time or to thereafter raise any objection to that judgment for a period of approximately 23 years, that the father did in fact authorize the North Carolina *Page 213 
counsel to make an appearance on his behalf and/or did in fact sign the answer that was filed on his behalf in that action, which resulted in a waiver of any in personam jurisdiction defense he might have had.
In light of the presumption in North Carolina law that the answer purportedly filed on behalf of the father in the 1980 North Carolina action was authorized by the father, and the conflicting evidence before the Alabama trial court as to the issue whether that presumption has been rebutted, we cannot conclude that the Alabama trial court's decision upholding the validity of the North Carolina judgment is due to be reversed.
Having determined that the North Carolina judgment is not void, we next consider the issue of the applicable statute of limitations. Section 30-3A-604(b), Ala. Code 1975, provides that "[i]n a proceeding for [child-support] arrearages, the statute of limitation under the laws of this state or of the issuing state, whichever is longer, applies." The parties agree that the applicable North Carolina statute of limitations is 10 years.See Lindsey v. Lindsey, 34 N.C.App. 201, 237 S.E.2d 561 (1977). On the other hand, § 6-2-32, Ala. Code 1975, states: "Within 20 years, actions upon a judgment or decree of any court of this state, of the United States or of any state or territory of the United States must be commenced." Child-support orders become final judgments on the dates payments thereunder are due. SeeT.L.D. v. C.G., 849 So.2d 200 (Ala.Civ.App. 2002) (citingOsborne v. Osborne, 57 Ala. App. 204, 206, 326 So.2d 766, 767
(Ala.Civ.App. 1976)); and State Dep't of Human Res. ex rel.Harper v. Finley, 634 So.2d 1025 (Ala.Civ.App. 1994). Accordingly, under Alabama law, the applicable statute of limitations in this case is 20 years. E.g., Leslie v. Beringer,636 So.2d 441 (Ala.Civ.App. 1994).[5] Because the limitations period provided by Alabama law is longer than that provided by North Carolina law, the Alabama statute of limitations governs and, accordingly, enforcement of the North Carolina judgment with respect to child-support payments due before February 10, 1983, is time-barred.
The father next argues that the trial court erred in calculating the amount of his child-support arrearage. Although the evidence concerning payments by the father is conflicting, ordinary arithmetic shows that the amount of the judgment exceeds the gross amount of the father's child-support obligation during the applicable period. The statute of limitations bars enforcement of installments due before February 10, 1983, and the father's child-support obligation ceased on April 12, 1993, when the younger child reached the age of majority. There are 122.07 months *Page 214 
in the interval between those two dates; the total amount of child support accruing in the interval between those two dates is $61,035-122.07 months times $500 per month. Thus, even if the father had made no payments, the trial court's calculation materially overstates the father's arrearage.
The parties disputed the amounts paid by the father and whether the father should receive credit for periods when the children were not living with the mother. The father testified that he had paid approximately $51,000 and introduced copies of checks and receipts relating thereto. The mother testified that the father made sporadic or infrequent payments, and she presented evidence showing payments by the father of approximately $24,000. On remand, the trial court is to resolve which, if any, of the payments apply to child-support obligations for the relevant period.
Based on the foregoing, we affirm that portion of the Alabama trial court's judgment declaring the North Carolina judgment not to be void. We reverse that portion of the judgment relating to the calculation of the amount of the father's arrearage, and we remand the cause for the trial court to determine the amounts paid by the father and the amount of credit, if any, to be given to the father, and for the trial court to determine the correct amount of the arrearage, for the 10-year period ending April 12, 1993.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.
[1] The affidavit contained testimony in support of the defenses raised by the father in response to the mother's complaint.
[2] The parties' relationship has been marked by almost continual strife. Each party accuses the other of various forms of bad faith, dishonesty, and other intentional misconduct.
[3] Under the Full Faith and Credit Clause of the United States Constitution, Alabama must enforce a foreign judgment to the same extent as would the state that rendered the judgment. Durfee v.Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963);McGouryk v. McGouryk, 672 So.2d 1300, 1302 (Ala.Civ.App. 1995). North Carolina (like Alabama) allows a void judgment to be attacked at any time. See Van Engen v. Que Scientific, Inc.,151 N.C.App. 683, 689, 567 S.E.2d 179, 184 (N.C.App. 2002) (a "`void judgment is a legal nullity which may be attacked at any time'"). Compare Ex parte Full Circle Distrib., L.L.C.,883 So.2d 638, 642-43 (Ala. 2003).
[4] The affidavit earlier stated that the arrangement between counsel and the father was for an attorney fee of $100 if an agreement could be reached regarding the transfer of jurisdiction of the child-support matter to the North Carolina court without the necessity of court action, but that a fee of $300 would be charged if a court hearing became necessary.
[5] We note that under § 6-9-191, Ala. Code 1975, the general rule in Alabama is that judgments are presumed satisfied after 10 years if, during such time, execution has not issued for the collection of that judgment. Judgments for child-support arrearages, however, are specifically excepted from this rule.See Derringer v. Beadlescomb, 537 So.2d 34, 36 (Ala.Civ.App. 1988):
 "In Tanana v. Alexander, 404 So.2d 61
(Ala.Civ.App. 1981), this court held that:
 "`[I]n the context of a custodial parent coming into court seeking a judicial determination of arrearage, . . . alleged past-due and unpaid child support payments are not "final judgments" for purposes of § 6-9-191 until there has been a judicial ascertainment and declaration of the amount past due.'
 "Therefore, the child support payments which came due in the years 1975-77 did not become `final judgments' until the court below issued its order in January 1988 declaring them to be past due. Thus, the payments are not subject to the presumption of satisfaction found in section 6-9-191."
(Emphasis added.)