IN THE MATTER OF: Q.T.H., W.L.R.
No. COA09-134
Court of Appeals of North Carolina.
Filed: July 7, 2009.
Lauren Vaughan for Iredell County Department of Social Services petitioner-appellee.
Richard E. Jester for respondent-mother appellant.
Pamela Newell Williams for guardian ad litem.
ROBERT N. HUNTER, Jr., Judge.
Respondent-mother appeals from the district court's order terminating her parental rights to her nine-year-old son, Q.T.H., and her twelve-year-old daughter, W.L.R. We affirm.
On 4 August 2004 and 12 April 2005, and 7 October 2005, the Iredell County Department of Social Services ("DSS") received reports alleging that respondent-mother was using illegal drugs, often in the presence of her children.
Following the April 2005 report, respondent-mother entered an inpatient drug treatment facility but failed to make plans for the care of her two minor children in her absence. DSS intervened to make a plan of care for the two children. During the April 2005 drug addiction treatment, respondent-mother was diagnosed with cocaine dependence, mood disorder, nicotine dependence, cannabis dependence, delusional disorder, and paranoid personality disorder. Respondent-mother was discharged from the treatment facility after approximately four weeks with the same diagnoses she received upon arrival.
The treatment facility staff encouraged respondent-mother to continue treatment for her diagnoses on an outpatient basis, including outpatient therapy, and twelve-step recovery meetings with a sponsor. She was also encouraged to find employment. After her discharge, respondent-mother abstained from drug use for eleven months before relapsing and abandoning outpatient treatments.
In August 2005, respondent-mother admitted to DSS that she was dealing drugs, and as a result of a bad drug deal, lost two hundred dollars. Unable to pay her rent for a fourth consecutive month, respondent-mother and her children were evicted from their apartment.
On 24 August 2005, Telecare Mental Health provided respondent-mother and her children an apartment on the condition that she would abstain from using drugs and comply with the treatment recommended by the drug treatment facility. Respondent-mother resumed her drug abuse and was evicted from the apartment on or about 31 October 2005.
On or about 31 October 2005, respondent-mother checked into a women's shelter where she was provided counseling for her drug addiction. During her stay at the women's shelter, respondent-mother became belligerent with the staff and other clients and was asked to leave on or about 7 December 2005. In response, respondent-mother ingested an overdose of her prescription medications; the record is unclear as to whether respondent-mother was taken to the hospital.
On 8 December 2005, DSS filed juvenile petitions alleging that Q.T.H., then aged six, and W.L.R., then aged nine, were neglected and dependent juveniles. The petitions alleged that the children did not receive adequate care and supervision due to respondent-mother's addiction to drugs, mental instability, and inability to maintain a residence. The petitions further alleged that respondent-mother had been evicted twice since November 2005 and overdosed on prescription antipsychotic medication on 1 December 2005. On 8 December 2005, the trial court entered nonsecure custody orders placing Q.T.H. and W.L.R. in DSS custody.
On 13 December 2005, respondent-mother entered the Crisis Center in Statesville, North Carolina, for treatment of her depression. Upon her discharge on 23 December 2005, respondent-mother was diagnosed with major depressive disorder and cocaine dependence.
The trial court continued nonsecure custody with DSS on 25 January 2006. Following a hearing on 7 February 2006, the trial court adjudicated the children neglected and dependent in an order entered 22 February 2006. The trial court held a separate dispositional hearing on 7 March 2006. At the time of the hearing, respondent-mother had entered into a case plan with DSS to address her substance abuse issues, mental health stability, life skills, and housing. Additionally, she re-enrolled in substance abuse treatment and psychological counseling, submitted negative drug screens, and secured a residence. Therefore, the trial court placed the children with respondent-mother, but allowed DSS to retain legal custody. The trial court also ordered respondent-mother to: (1) remain drug free; (2) submit to random drug screens; (3) complete her case plan; (4) maintain suitable housing; (5) maintain stable employment; (6) reimburse DSS for the children's expenses; and (7) continue in counseling.
By 22 May 2006, DSS had received information which led to second juvenile petitions alleging neglect. DSS alleged that respondent-mother was unemployed, had had her electricity disconnected, was $1,200 behind in rent, and faced eviction. DSS also learned that, on 16 May 2006, respondent-mother failed to pick the children up from school, and her whereabouts were unknown at the time. She reappeared the next day, and later claimed that she spent the night in jail. However, DSS confirmed that respondent-mother's claim was not true. On 22 May 2006, the trial court placed the children in the physical custody of DSS, which was subsequently continued.
The trial court conducted a review hearing on 8 August 2006. At the time of the hearing, respondent-mother's whereabouts were unknown and she had little contact with DSS. Additionally, she had refused to take three drug tests and was no longer participating in her substance abuse and mental health treatment. As a result, the trial court ceased reunification efforts and established a permanent plan of adoption or guardianship for the children. The trial court also ceased respondent-mother's visitation.
Respondent-mother's whereabouts remained unknown until September 2006, when DSS discovered that she was incarcerated at the Iredell County Jail, serving a ninety-day sentence for a worthless check offense. After respondent-mother's release from jail, she entered a fourteen-day substance abuse treatment program on 11 January 2007 and received a certificate of completion on 25 January 2007. Upon her release, however, respondent-mother failed to maintain regular contact with DSS.
Respondent-mother was incarcerated again from July to September 2007, and moved into a halfway house following her release. Although she contacted a social worker while she was incarcerated, she failed to maintain contact with DSS upon her release from jail. By November 2007, she had moved around several times, and was residing in a motel in Statesville, North Carolina. She also failed to provide DSS with any form of verification that she sought or received substance abuse treatment or mental health treatment. Based on the foregoing, the trial court continued the permanent plan of adoption and continued cessation of respondent-mother's visitation.
On 6 June 2008, DSS filed petitions to terminate respondent-mother's parental rights to Q.T.H. and W.L.R. on the following grounds: (1) neglect; (2) willfully leaving the juvenile in foster care for over twelve months without showing reasonable progress in correcting the conditions which led to removal; (3) willfully failing to pay a reasonable portion of the cost of care for the juveniles; (4) dependency; and (5) willful abandonment. The petition also sought to terminate the parental rights of the fathers of Q.T.H. and W.L.R.
The trial court conducted a hearing in the matter on 15 and 17 October 2008. During the adjudication portion of the hearing, a DSS social worker, a psychiatrist, a licensed therapist, and a psychologist testified on behalf of DSS. The psychiatrist and licensed therapist treated respondent-mother at various points during the course of the juvenile matter, and the psychologist assessed respondent-mother's mental health needs while she was living at a shelter. Respondent-mother did not present any evidence at the hearing. Following the adjudication testimony, the trial court concluded that grounds existed to terminate respondent-mother's parental rights to Q.T.H. and W.L.R. The trial court then proceeded to disposition, during which a DSS social worker, the children's therapist, and the children's foster father testified. The trial court concluded that it was in the children's best interests to terminate respondent-mother's parental rights to the children. Respondent-mother gave timely notice of appeal from the orders. The trial court also terminated the parental rights of the juveniles' fathers, but neither of the fathers appeal.

I.
Respondent-mother first argues that the evidence does not support the trial court's conclusion that her parental rights should be terminated. As an initial matter, we note that, although respondent-mother assigned error to several findings of fact, she did not argue any of them in her brief. Because respondent-mother has not challenged any findings of fact in her brief, we must deem these assignments of error abandoned. In re Bishop, 92 N.C. App. 662, 664, 375 S.E.2d 676, 678 (1989) (citing N.C.R. App. P. 28(b)(5)). For this reason, all of the trial court's findings of fact are binding on appeal. See In re Humphrey, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003).
Pursuant to N.C. Gen. Stat. § 7B-1111(a) (2007), a trial court may terminate parental rights upon a finding of one of the ten enumerated grounds. Here, the trial court found that five grounds exist to terminate respondent-mother's parental rights to Q.T.H. and W.L.R.: (1) neglect; (2) willfully leaving the juveniles in foster care for over twelve months without showing reasonable progress in correcting the conditions which led to the removal; (3) willfully failing to pay a reasonable portion of the cost of care for the juveniles; (4) dependency; and (5) willfully abandoning the juveniles for at least six months. Although the trial court found that five grounds exist, "[a] single ground . . . is sufficient to support an order terminating parental rights." In re J.M.W., E.S.J.W., 179 N.C. App. 788, 789, 635 S.E.2d 916, 917 (2006) (footnote omitted). Therefore, if we find that the findings of fact support one of the grounds, we need not review the other grounds. See Humphrey, 156 N.C. App. at 540, 577 S.E.2d at 426-27.
However, respondent-mother challenges only two of five grounds in her brief. Respondent-mother contends that the trial court erred in determining that she willfully failed to pay support and willfully abandoned the children. Because she has not challenged the remaining grounds in her brief, she has not preserved her assignments of error related to those grounds for appellate review. See In re J.D.S., 170 N.C. App. 244, 252, 612 S.E.2d 350, 355 ("Our review is limited to the assignments of error and grounds set forth in appellant's brief. N.C.R. App. P. 10(a) and 28(a)."), cert. denied, 360 N.C. 64, 623 S.E.2d 584 (2005). Therefore, the three remaining grounds for termination are binding on appeal. Accordingly, the trial court did not err in concluding that grounds existed to terminate respondent-mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2).

II.
Finally, we turn to respondent-mother's argument that the trial court erred by concluding that it was in the best interests of the children to terminate respondent-mother's parental rights. After an adjudication determining that grounds exist for terminating parental rights, the trial court is required to consider the following factors in determining whether termination is in the juvenile's best interest:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2007). We review the trial court's determination that a termination of parental rights is in the best interest of the juvenile for an abuse of discretion. In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "Abuse of discretion exists when `the challenged actions are manifestly unsupported by reason.'" Barnes v. Wells, 165 N.C. App. 575, 580, 599 S.E.2d 585, 589 (2004) (citation omitted).
Our review of the record reveals that the trial court properly considered all of the factors enumerated in N.C. Gen. Stat. § 7B-1110(a) in thirteen dispositional findings of fact, before determining that termination was in the best interests of the children. Again, because respondent-mother fails to challenge any of the findings of fact, they are binding on appeal. See J.D.S., 170 N.C. App. at 251-52, 612 S.E.2d at 355.
Respondent-mother argues that the trial court's best interest determination was incorrect. She contends that the trial court overlooked the bond between respondent-mother and W.L.R., because there is evidence that W.L.R. loves and misses her mother. We disagree with her assertion. In the trial court's undisputed findings of fact regarding disposition, the court found that "there is only a minimal bond existing between the minor child and the Respondent Mother [] since they have not seen each other in over 18 months, and have not visited in over two years." Moreover, this finding is supported by the evidence. The children's therapist testified the children are very attached to their foster parents. She also testified that, while W.L.R. is attached to her mother, W.L.R. mostly talks about her mother in the past tense and that the bond between them is minimal. The DSS social worker reiterated that W.L.R.'s memories of her mother are not positive, due to drug use and inability to maintain a stable home. Further, the social worker testified that the children wished to be adopted and had a wonderful relationship with their foster parents. Based on the foregoing, we do not find any abuse of discretion in the trial court's best interest determination.

III.
Finally, we note that respondent-mother concedes her last argument on appeal. Accordingly, this argument is deemed abandoned. See N.C.R. App. P. 26(b)(6).
Affirmed.
Judges ERVIN and BEASLEY concur.
Report per Rule 30(e).