IN THE MATTER OF: S.R.W.
No. COA09-704
Court of Appeals of North Carolina.
Filed December 22, 2009.
This case not for publication
No brief filed for petitioner-appellee, mother.
Robin E. Strickland for respondent-father, appellant.
BRYANT, Judge.
In June 2008, petitioner-mother sought termination of respondent-father's parental rights. Following a termination hearing, the trial court terminated respondent-father's parental rights to his daughter, S.R.W., by order entered 26 February 2009. Respondent-father appeals. For the following reasons, we affirm.

Facts
Respondent-father and petitioner-mother were married on 31 May 2003 and moved to Rockingham County in January 2004 to live with petitioner-mother's parents. S.R.W. was born on 29 March 2004. Respondent-father and petitioner-mother separated in February 2005. Petitioner-mother and S.R.W. continued to live with S.R.W.'s maternal grandparents.
On 31 January 2006, petitioner-mother joined the military. S.R.W. continued living with her maternal grandparents while petitioner-mother had basic training for nine weeks, attended "AIT" for four months and was deployed overseas. In July 2006, petitioner-mother filed for divorce and sought custody of S.R.W. Upon being deployed in August of 2006, petitioner-mother gave her mother power-of-attorney to proceed with the divorce/custody action in her absence. On 16 October 2006, the trial court granted exclusive care, custody and control of S.R.W. to petitioner-mother and ordered respondent-father to pay child support in the amount of $352.97 a month.
In August 2007, petitioner-mother was stationed in Virginia after her year-long deployment. On 12 January 2008, petitioner-mother married T.R., who was also in the military. Petitioner-mother, through the maternal grandmother, filed a petition for termination of respondent-father's parental rights on 9 June 2008. The petition alleged two grounds for termination: (1) willful failure to pay a reasonable portion of the cost of care for S.R.W. for the six-month period preceding the filing of the petition despite being physically and financially able to do so (N.C. Gen. Stat. § 7B-1111(a)(3)); and (2) willful abandonment of S.R.W. for at least six months immediately prior to the filing of the petition (N.C. Gen. Stat. § 7B-1111(a)(7)). A termination of parental rights hearing was held on 16 December 2008.
Petitioner-mother testified that after she joined the military, S.R.W. continued to live with her maternal grandparents in Rockingham County. Petitioner-mother has maintained regular contact with S.R.W. through regular phone calls and visits. Petitioner-mother has provided S.R.W. insurance through the military and, while deployed, sent money to the maternal grandmother for S.R.W.'s care.
Petitioner-mother further testified that her husband has been involved with S.R.W. for the past year and a half, is called "daddy" by S.R.W., and wants to adopt the child. In addition, S.R.W. has spent holidays with her husband's family. Petitioner-mother and her husband plan to move back to North Carolina and live with S.R.W. to "become a real family" once their medical discharges become final.
Petitioner-mother also testified that after she and respondent-father separated, respondent-father initially visited S.R.W. every other weekend for about six months and then only once a month. While petitioner-mother was in basic training respondent-father had "a couple of visitations" with S.R.W. Respondent-father paid child support until petitioner-mother entered the military.
The maternal grandmother testified that respondent-father: had an overnight visit with S.R.W. in February 2006; called in May of 2006 regarding a visit with S.R.W., but did not pick her up; spoke with S.R.W. on 6 August 2006; visited with S.R.W. on 6 November 2006; called in December 2006 regarding a Christmas visit, but never showed up; and had not contacted S.R.W. since December 2006. The maternal grandmother's residence, where S.R.W. has always lived, is less than half a mile from respondent-father's parents. She further testified that when her phone number changed, she gave the new number to respondent-father and his step-father. The maternal grandmother testified that S.R.W. was in her mother's wedding which took place in Rockingham County and she "feel[s] that [S.R.W.] needs a family." She also noted that although S.R.W. "doesn't know that her mom is expecting, [] she really does want a sibling" and S.R.W. would be "a helper to the new child."
Respondent-father testified that he did not know about the child support order until he was served with the termination petition. Respondent-father admitted that the last time he saw S.R.W. was in November of 2006 and the last time he spoke to her was in December 2006. Respondent-father testified that after December 2006, he would call approximately three times per month, but no one ever answered and his messages were not be returned. Petitioner-mother denied that anyone prevented respondent-father from speaking to S.R.W. Respondent-father also testified that he: received his second driving while impaired conviction in 2006; was placed on probation; that his probation was revoked upon his failing a urinalysis test; has been incarcerated for the past seven months; and had a projected release date of 9 April 2009. Respondent-father admitted that he knew where the maternal grandparents lived but stated he did not know the P.O. Box number. He noted that during his incarceration, "communication to the outside world is very limited." Respondent-father's mother testified that her calls to the maternal grandparents went unanswered.
At the conclusion of the hearing, the trial court found both grounds for termination of respondent-father's parental rights. The trial court then determined that termination was in the best interests of S.R.W. and ordered that respondent-father's parental rights be terminated. The trial court entered its findings and conclusions in an order filed 26 February 2009. Respondent-father appeals.
Respondent-father contends the trial court erred in: (I) concluding that sufficient grounds existed to terminate respondent-father's parental rights; and (II) determining that it was in the best interests of S.R.W. to do so. As discussed below, we affirm.

Standard of Review
Termination of parental rights involves a two-stage process. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). At the adjudicatory stage, "the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111 exists." In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002). "If the trial court determines that grounds for termination exist, it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child." Id. at 98, 564 S.E.2d at 602. The trial court's decision to terminate parental rights is reviewed under an abuse of discretion standard. Id. An abuse of discretion is shown when the trial court's actions are "manifestly unsupported by reason." Barnes v. Wells, 165 N.C. App. 575, 580, 599 S.E.2d 585, 589 (2004).

I
Respondent-father first contends the trial court erred by terminating his parental rights based upon his willful abandonment of S.R.W. pursuant to N.C.G.S. § 7B-1111(a)(7). He specifically argues the trial court's findings of fact do not support its conclusion that his abandonment was "willful." We disagree.
To show willful abandonment, petitioner must present evidence that respondent-father willfully abandoned S.R.W. for at least six consecutive months prior to the filing of the termination petition. See N.C.G.S. § 7B-1111(a)(7) (2007). Since the termination petition was filed on 9 June 2008, the determinative period here is 9 December 2007 to 9 June 2008.
This Court has defined abandonment as:
wilful [sic] neglect and refusal to perform the natural and legal obligations of parental care and support . . . . [I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child.
Pratt v. Bishop, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962); see also In re Humphrey, 156 N.C. App. 533, 540, 577 S.E.2d 421, 427 (2003). "The word `willful' encompasses more than an intention to do a thing; there must also be purpose and deliberation." In re Adoption of Searle, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986) (citation omitted). "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." Id. at 276, 346 S.E.2d at 514.
To support its conclusion that respondent-father willfully abandoned S.R.W. at least six consecutive months immediately preceding the filing of the petition to terminate, the trial court made the following relevant findings of fact:
[9]a. The minor child resided with Petitioner Roland and Respondent father from birth until February 18, 2005, when mother and father separated, at which time, Petitioner Roland became the primary caretaker.
[9]b. Respondent father had sporadic contact with the minor child from February 18, 2005 until August 1, 2005. Respondent father had no contact with minor child from August 1, 2005 until February 14, 2006. On February 14, 2006, Respondent father had an overnight visit with the minor child until February 16, 2006. Respondent-father had no contact with the minor child until November 6, 2006.
[9]c. Respondent father contacted Petitioner Roland regarding a visit during Christmas in December 2006; however [he] did not visit the child. Since December 2006, Respondent father had no contact with the minor child, Petitioner Roland, nor [sic] Petitioner Lawson.
[9]d. During February 16, 2006 and November 6, 2006, Respondent Father moved to Moore County and was convicted of his second DWI in three years. After Respondent father moved to Moore County, he was employed, working in numerous restaurants, and living in three (3) different residences.
[9]e. Respondent father violated his probation and has been serving an active sentence in the Robeson Correctional facility since August 2007. Respondent father has had access to mail and phone calls since his incarceration, but has made no attempt to contact the minor child, herein.
Respondent-father argues he could not have willfully abandoned S.R.W. because he was incarcerated during the six months preceding the filing of the petition. Pursuant to N.C.G.S. § 7B-1111(a)(7), petitioner must present evidence that respondent-father willfully abandoned S.R.W. for "at least" six consecutive months prior to the filing of the termination petition. Here, respondent-father concedes he had not seen S.R.W. since November 2006 and had not spoken to her since December 2006. Further, while incarcerated, respondent-father did not have any written or verbal contact with S.R.W. Finally, no child support was paid by respondent-father. These unchallenged findings of fact establish that respondent-father withheld "his presence, his love, his care, the opportunity to display filial affection, and wilfully neglect[ed] to lend support and maintenance[.]" Pratt, 257 N.C. at 501, 126 S.E.2d at 608. We hold that the trial court's findings of fact support the trial court's conclusion of law that respondent-father "willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C.G.S. § 7B-1111(a)(7).
Because the existence of any one of the grounds enumerated in N.C.G.S. § 7B-1111 is sufficient to support termination, respondent-father's remaining argument regarding N.C.G.S. § 7B-1111(a)(3) need not be addressed. See In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990).

II
Respondent-father also contends the trial court erred in its determination of S.R.W.'s best interest pursuant to N.C. Gen. Stat. § 7B-1110. In determining whether terminating a parent's rights is in the juvenile's best interest, the court shall consider:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C.G.S. § 7B-1110 (2007).
The court made the following findings of fact in support of its determination:
12. The minor child is currently living with her maternal grandmother, Petitioner L[.], where she has lived since February 18, 2005.
13. Petitioner R[.] has maintained a strong bond with the minor child, in that even though she has been a member of the United States Armed Forces and has been deployed to Iraq for a year, she speaks with the minor child, herein every night and visits with the minor child, herein at least one and sometimes two weekends per month.
14. Petitioner R[.] remarried T[.]R[.] accompanies Petitioner R[.] on her visits with the minor child. The R[.]s have also had the minor child spend holidays with them and with T[.]R[.]'s family, thereby creating a strong bond between T[.]R[.] and the minor child.
15. Petitioner R[.] has been awarded a medical discharge from the Army and is awaiting for the discharge to become effective. Petitioner R[.] and T[.]R[.] plan to return to Rockingham County and assume full custody of the minor child, herein. T[.]R[.] plans to adopt the minor child upon termination of Respondent father's parental rights. Petitioner R[.] and T[.]R[.] are expecting a child.
16. The minor child herein is four years old and has not had any contact or any significant bond with the Respondent father since November 6, 2006, which is in effect, one half of the minor child's life.
17. The termination of respondent father's parental rights will aid in the accomplishment of a permanent and stable home for the minor child, herein.
18. The parental rights of Respondent father should be terminated and it is in the minor child's best interest that his parental rights be terminated.
Respondent-father first challenges findings of fact 13 and 14. Respondent father argues that petitioner-mother and her husband did not have a strong bond with S.R.W. However, petitioner-mother spoke regularly with S.R.W. during basic training, AIT, and deployment overseas, and she and her husband visit with S.R.W. at least once a month. Further, petitioner-mother's husband was involved with S.R.W. for a year-and-a-half and S.R.W. calls him "daddy." We conclude findings of fact 13 and 14 are supported by competent evidence.
Respondent-father also challenges finding of fact 17, arguing that S.R.W.'s home would be permanent and stable without terminating his rights. Petitioner-mother, who is expecting another child with her new husband, wants to provide S.R.W. with a "real family." Further, the maternal grandmother testified that S.R.W. "needs a family." Finally, petitioner-mother's new husband has been involved with S.R.W. and wants to adopt S.R.W., which cannot take place without terminating respondent-father's parental rights. We conclude that finding of fact 17 is supported by the evidence.
The trial court's findings of fact indicate that the court considered all of the statutorily mandated factors and came to its decision through a rational reasoning process. Thus, the court did not abuse its discretion in concluding that the termination of respondent-father's parental rights was in the best interest of S.R.W., and we affirm.
AFFIRMED.
Judges HUNTER, Robert C., and JACKSON concur.
Report per Rule 30(e).