IN THE MATTER OF: M.H.B., A MINOR CHILD

No. COA08-337

(Filed 19 August 2008)

**1. Child Abuse and Neglect— concerns about parent's competency— guardian ad litem for parent not considered— abuse of discretion**

The trial court abused its discretion in a child abuse and neglect proceeding by not holding a hearing or making a determination as to whether the biological father (respondent) was incompetent or had diminished capacity and could not adequately protect his own interest. The court's orders in the case

IN RE M.H.B.

[192 N.C. App. 258 (2008)]

demonstrate concerns about respondent's competency and capacity that were serious enough to order a psychological evaluation and a suspension of visitation rights, but the record does not show that the court considered appointment of a guardian ad litem.

## 2. Child Abuse and Neglect— visitation with child—authority delegated to DSS—improper

The trial court erred by delegating its judicial power in a child abuse and neglect proceeding by giving DSS sole discretion over respondent's visitation with the child.

Appeal by Respondent from adjudication order entered 22 October 2007 by Judge Bradley B. Letts and from disposition orders entered 18 and 28 December 2007 by Judge Danny E. Davis in District Court, Swain County. Heard in the Court of Appeals 23 July 2008.

*Chester M. Jones for Petitioner-Appellee Swain County Department of Social Services.*

*The Turrentine Group, PLLC, by Karlene Scott-Turrentine, for Respondent-Appellant.*

*Pamela Newell Williams for Respondent-Appellee Guardian ad Litem.*

McGEE, Judge.

The biological father of M.H.B. (Respondent) appeals from adjudication and disposition orders finding M.H.B. to be abused and neglected. For the reasons set forth below, we reverse and remand.

The Swain County Department of Social Services (DSS) received a report from Memorial Mission Hospital of possible child abuse regarding M.H.B. on 25 June 2007. In response to the report, DSS filed a petition on 27 June 2007 alleging that M.H.B. was abused and neglected. DSS alleged M.H.B. had suffered multiple broken ribs, hemorrhaging of the eyes, internal bleeding, and bruises on her chest that were the result of the intentional acts and/or improper care of both Respondent and M.H.B.'s biological mother, who is not a party to this appeal. The trial court entered an order for nonsecure custody on 27 June 2007, placing custody of M.H.B. with DSS.

The trial court held a hearing on 24 September 2007 and entered an order adjudicating M.H.B. to be an abused and neglected juvenile

on 22 October 2007. In its adjudication order, the trial court ordered, in part, that "[Respondent] . . . shall submit to a psychological evaluation and results of the same shall be made available unto [DSS] and the Guardian ad litem for [M.H.B.]" The trial court also ordered that "the Balsam Center shall allow [DSS] and the Guardian ad litem and other parties hereto access to and copies of any and all mental health records of the Balsam Center concerning [Respondent]." The trial court held a disposition hearing on 22 October 2007 and entered a disposition order on 18 December 2007, continuing custody of M.H.B. with DSS, but authorizing a trial home placement of M.H.B. with her biological mother in the residence of the maternal grandparents. The trial court entered a revised disposition order on 28 December 2007. As to visitation, both the 18 and 28 December 2007 disposition orders provided as follows:

> That visitation with [M.H.B.] by [Respondent] . . . shall be at time and places set by [DSS] within its discretion. However, the Court suspends visitation between [Respondent] and [M.H.B.] at this time pending receipt and review of the reports from the Balsam Center by [DSS]. In addition, [Respondent] shall undergo a drug screen before he has any visitation. Further the Court leaves in the discretion of [DSS] to start visitation between [M.H.B.] and [Respondent] after [DSS] receives and reviews such records concerning [Respondent] from the Balsam Center and after [Respondent] undergoes a drug screen. Any [and] all visitation between [Respondent] and [M.H.B.] shall be supervised.

Respondent father appeals.

---

**[1]** Respondent argues the trial court erred by failing to appoint a guardian ad litem to represent him.[1] During proceedings held on petitions for abuse, neglect, or dependency, the Juvenile Code presently provides:

> On motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent in accordance with [N.C. Gen. Stat. §] 1A-1, Rule 17, if the court determines that there is a reasonable basis to believe that the parent is incompe-

---

1. In his brief, Respondent refers to N.C. Gen. Stat. § 7B-1101.1(c) (2007) as the statute governing when an appointment of a guardian ad litem for a parent is required. However, N.C. Gen. Stat. § 7B-1101.1 (2007) provides for a parent's right to counsel or a guardian ad litem in a termination of parental rights proceeding. The governing statute in an adjudication of abuse, neglect, or dependency proceeding is N.C. Gen. Stat. § 7B-602 (2007).

tent or has diminished capacity and cannot adequately act in his or her own interest.

N.C. Gen. Stat. § 7B-602(c) (2007); *see also* N.C. Gen. Stat. § 1A-1, Rule 17 (2007).

Our research has revealed no published case interpreting N.C.G.S. § 7B-602(c), which was added to N.C.G.S. § 7B-602 in 2005, and which applies to petitions filed on or after 1 October 2005. Prior to enactment of N.C.G.S. § 7B-602(c), N.C. Gen. Stat. § 7B-602(b) (2003) provided that a trial court was required to appoint a guardian ad litem for a parent who was a minor and

> [w]here it is alleged that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101 in that the parent is incapable as the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition of providing for the proper care and supervision of the juvenile[.]

N.C. Gen. Stat. § 7B-602(b) (2003). Under the new provision, which applies in the present case, a trial court is required to appoint a guardian ad litem for a parent only when the parent is a minor. N.C. Gen. Stat. § 7B-602(b) (2007). However, in addition, the new provision permits any party to file a motion requesting the trial court to appoint a guardian ad litem for a parent in any neglect, abuse, or dependency proceeding where "there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own· interest." N.C.G.S. § 7B-602(c). N.C.G.S. § 7B-602(c) also allows the trial court to appoint a guardian ad litem on its own motion pursuant to these same criteria. Because N.C.G.S. § 7B-602(c) employs the term "may," a trial court's action pursuant to this statute is discretionary, and our review is limited to a determination of whether the trial court abused its discretion. *See Loren v. Jackson,* 57 N.C. App. 216, 219, 291 S.E.2d 310, 312 (1982). A trial court abuses its discretion when its decision is "manifestly unsupported by reason." *White v. White,* 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). However, "[a] court's complete failure to exercise discretion amounts to reversible error." *State v. McVay,* 174 N.C. App. 335, 340, 620 S.E.2d 883, 886 (2005); *see also State v. Bartlett,* 153 N.C. App. 680, 685, 571 S.E.2d 28, 31 (2002) (recognizing that "[w]here the trial court fails to exercise its discretion, . . . such failure constitutes reversible error").

IN RE M.H.B.

[192 N.C. App. 258 (2008)]

Our Court has also held that a trial court "has a duty to inquire into the competency of a litigant in a civil proceeding where 'circumstances are brought to [the trial court's] attention, which raise a substantial question as to whether the litigant is *non compos mentis.*'" *In re S.N.H.*, 177 N.C. App. 82, 87-88, 627 S.E.2d 510, 514 (2006) (quoting *In re J.A.A.*, 175 N.C. App. 66, 72, 623 S.E.2d 45, 49 (2005)). "'Whether the circumstances . . . are sufficient to raise a substantial question as to the party's competency is a matter to be initially determined in the sound discretion of the trial judge.'" *In re J.A.A.*, 175 N.C. App. at 72, 623 S.E.2d at 49 (quoting *Rutledge v. Rutledge*, 10 N.C. App. 427, 432, 179 S.E.2d 163, 166 (1971)).

Pursuant to N.C. Gen. Stat. § 35A-1101(7) (2007), an "Incompetent adult" is defined as

an adult or emancipated minor who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition.

The phrase "diminished capacity," which appears in N.C.G.S. § 7B-602(c), is used primarily in the criminal law context and is defined as "[a]n impaired mental condition—short of insanity—that is caused by intoxication, trauma, or disease and that prevents a person from having the mental state necessary to be held responsible for a crime." Black's Law Dictionary 220 (8th ed. 2004). However, our Court has also defined "diminished capacity" in the juvenile context as a "lack of 'ability to perform mentally.'" *In re Reinhardt*, 121 N.C. App. 201, 204, 464 S.E.2d 698, 701 (1995) (quoting *Taber's Cyclopedic Medical Dictionary* 278 (16th ed. 1989)), *overruled on other grounds by In re Brake*, 347 N.C. 339, 493 S.E.2d 418 (1997).

In the case before us, the trial court made the following findings of fact related to Respondent's mental state both prior to the hearing and at the hearing:

38. . . . [Respondent] states that he is suffering posttraumatic stress disorder, that he [h]as a diagnosis of being manic depressive and bipolar. He states that he was prescribed medication including lithium. He stated that he did not like the side effects of the prescribed medication and discontinued taking the same. He stated that he now self medicates by consuming marijuana and that he uses approximately 25 dollars of marijuana per week.

**IN RE M.H.B.**

[192 N.C. App. 258 (2008)]

39. That since the filing of the petition, [Respondent] has received mental health treatment and recommenced taking his prescription medications and is taking them currently.

40. That while [Respondent] was testifying in this case, the Court noted that he was weeping, crying, confounded, agitated and stated that he wished someone would take his life right then.

41. That after the Petition was filed in this case, [Respondent] did threaten suicide.

42. That [Respondent] is mentally and emotionally unstable.

43. That while testifying, [Respondent] even stated that he did not know why he was present at the adjudicatory hearing in this case.

Based upon these findings of fact, Respondent argues the trial court abused its discretion by failing to appoint a guardian ad litem for him. In response, DSS contends as follows:

It is submitted that if one considered only the foregoing out of proper context and without considering the totality of the testimony, facts and circumstances which were in fact before the trial court, then one might possibly be concerned that there was a reasonable basis that [Respondent] may have had some sort of diminished capacity at the time of the adjudicatory hearing *and* that [Respondent] was not able to act in his own interest. However, when the rest of the story is presented and considered and these findings of fact are considered in proper context, then the argument that [Respondent] had diminished capacity to such a point that he was entitled to have the [trial] [c]ourt *sua sponte* appoint him a GAL simply fails.

Specifically, DSS contends that the trial court's findings that Respondent was "weeping, crying, confounded, [and] agitated" while testifying and that Respondent was "mentally and emotionally unstable" relate solely to Respondent's mental state while he was undergoing cross-examination. DSS contends that Respondent merely became frustrated by cross-examination questions that related to Respondent's drug use and criminal history.

However, despite DSS's contentions, the transcript does not reflect that Respondent was "weeping, crying, confounded, [and] agitated" solely during cross-examination. At the close of the adjudication hearing, the trial court stated that "throughout his testimony

**IN RE M.H.B.**

[192 N.C. App. 258 (2008)]

[Respondent] ran the gamut of emotions from weepy to crying to then becoming agitated and angry, and then at some point seeming confused." We cannot speculate that the trial court observed this behavior solely while Respondent was undergoing cross-examination. Moreover, the trial court did not attempt to limit its finding that Respondent is "mentally and emotionally unstable." Therefore, we are unable to say that these findings related solely to Respondent's alleged frustration during cross-examination.

The trial court's findings of fact 38 and 39 also demonstrate that at the time of the hearing Respondent was receiving mental health treatment and was taking medications. Finding of fact 41 further demonstrates that Respondent threatened to commit suicide after the filing of the petition. All of these findings raise serious questions as to Respondent's competency, capacity, and ability to adequately act in his own interest.

The trial court also made a finding of fact that "while testifying, [Respondent] even stated that he did not know why he was present at the adjudicatory hearing in this case." DSS contends that "[t]he context clearly shows that [Respondent] was not without an understanding as to why he was on the stand testifying." It is correct that when Respondent indicated he was not sure why he was at the hearing, the trial court interrupted the cross-examination of Respondent and conducted the following inquiry:

[RESPONDENT]: I don't see how this is relevant either. Can somebody please tell me why I'm on the stand? I mean, you know, I—I'm—I'm being honest with you, and I—I'm trying to answer your questions, ma'am.

THE COURT: [Respondent], you don't understand why you're testifying?

[RESPONDENT]: Yeah, I—I—I mean, I just —

THE COURT: Do you understand what this trial —

[RESPONDENT]: Yes, sir, I —

THE COURT: —is about?

[RESPONDENT]: Yes, sir I do, yeah, yes, sir.

THE COURT: Do you want me to explain why you're on the stand?

[RESPONDENT]: Well, no, sir. No. I'm just saying I—I feel like the questions she's asking me [are] irrelevant to what—

THE COURT: You were talking about the use of marijuana?

[RESPONDENT]: Yes, sir.

THE COURT: Oh, okay.

[RESPONDENT]: That's what I was saying, sir.

THE COURT: Well, go ahead. I just want to make sure you understood what we were doing. Let the record reflect he does understand we're in court in a trial, and this does involve his minor child. Next question?

As to this inquiry, the trial court stated the following at the close of the hearing: "[Respondent] does appear to be cognizant and realize what this case is about and able to assist [his attorney] in his presentation of evidence related to this petition." However, while the trial court inquired as to whether Respondent knew why he was testifying, the trial court did not conduct a hearing as to Respondent's competency, capacity, or ability to adequately act in his own interest.

We hold that based upon all of the evidence before the trial court, as reflected in the trial court's findings, there was "a reasonable basis to believe that [Respondent] [was] incompetent or ha[d] diminished capacity and [could not] adequately act in his . . . own interest." *See* N.C.G.S. § 7B-602(c). We also hold that the evidence " 'rais[ed] a substantial question as to whether [Respondent] [was] *non compos mentis.*' " *In re S.N.H.*, 177 N.C. App. at 87-88, 627 S.E.2d at 514 (quoting *In re J.A.A.*, 175 N.C. App. at 72, 623 S.E.2d at 49). However, the trial court failed to hold a hearing regarding Respondent's competency, capacity, or ability to adequately act in his own interest. As a result, the trial court also failed to make a determination as to these issues. We must therefore determine whether this failure amounted to an abuse of discretion.

We first recognize that although the trial court made numerous findings of fact that raised doubts as to Respondent's competency, capacity, and ability to adequately act in his own interest, the trial court did not make any findings resolving those doubts in favor of a finding that Respondent was competent and had the capacity and ability to adequately act in his own interest. In fact, the trial court could not have done so because it did not hold a hearing regarding these issues.

IN RE M.H.B.

[192 N.C. App. 258 (2008)]

Furthermore, in its adjudication order, the trial court ordered that "[Respondent] . . . shall submit to a psychological evaluation and results of the same shall be made available unto [DSS] and the Guardian ad litem for [M.H.B.]" The trial court also ordered that "the Balsam Center shall allow [DSS] and the Guardian ad litem and other parties hereto access to and copies of any and all mental health records of the Balsam Center concerning [Respondent.]" Moreover, in its disposition orders, the trial court "suspend[ed] visitation between [Respondent] and [M.H.B.] at this time pending receipt and review of the reports from the Balsam Center by [DSS]." The trial court gave DSS "the discretion . . . to start visitation between [M.H.B.] and [Respondent]," but only after DSS received and reviewed psychological records concerning Respondent from the Balsam Center. These orders demonstrate that the trial court had concerns regarding Respondent's competency and capacity that were serious enough to cause the trial court to order Respondent to undergo a psychological evaluation. The trial court even suspended Respondent's visitation rights pending a psychological evaluation. However, despite these concerns, the record does not show that the trial court considered appointment of a guardian ad litem for Respondent during the adjudication hearing. Taking into consideration all of the trial court's concerns related to Respondent's competency, capacity, and ability to adequately act in his own interest, as reflected in its findings of fact, and the trial court's subsequent order that Respondent undergo a psychological evaluation, the trial court abused its discretion by failing to hold a hearing or make a determination as to whether Respondent was incompetent or had diminished capacity and could not adequately act in his own interest. Although it is unclear whether the trial court would have appointed a guardian ad litem for Respondent had the trial court held a hearing and made a determination as to these issues, the trial court's complete failure to exercise its discretion to hold such a hearing and make such determinations under these circumstances amounted to an abuse of discretion. *See McVay*, 174 N.C. App. at 340, 620 S.E.2d at 886; *Bartlett*, 153 N.C. App. at 685, 571 S.E.2d at 31. We therefore reverse the adjudication and disposition orders and remand this matter for further proceedings consistent with this opinion.

[2] Respondent also argues the trial court erred by giving DSS sole discretion as to whether Respondent should be allowed visitation with M.H.B. Intertwined with this argument is Respondent's contention that the trial court erred by permitting DSS to base visitation with M.H.B. on DSS's review of pending psychological evaluations of

Respondent. "This Court reviews the trial court's dispositional orders of visitation for an abuse of discretion." *In re C.M.*, 183 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007).

Pursuant to N.C. Gen. Stat. § 7B-905(c) (2007),

[a]ny dispositional order under which a juvenile is removed from the custody of a parent, guardian, custodian, or caretaker, or under which the juvenile's placement is continued outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile and consistent with the juvenile's health and safety.

A trial court exercises a judicial function when it awards custody of a child and when it awards visitation rights. *In re Custody of Stancil*, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971). These judicial functions may not be delegated to the custodian of a child. *Id.*

If the court finds that the parent has by conduct forfeited the right [of visitation] or if the court finds that the exercise of the right [of visitation] would be detrimental to the best interest and welfare of the child, the court may, in its discretion, deny a parent the right of visitation with, or access to, [the] child; but the court may not delegate this authority to the custodian.

*Id.* If the trial court does not make such findings, "the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place and conditions under which such visitation rights may be exercised." *Id.*; *see also In re R.A.H.*, 182 N.C. App. 52, 61, 641 S.E.2d 404, 409-10 (2007); *In re C.P.*, 181 N.C. App. 698, 705-06, 641 S.E.2d 13, 18 (2007); *In re E.C.*, 174 N.C. App. 517, 521-23, 621 S.E.2d 647, 651-52 (2005).

In the present case, the trial court's disposition orders provided as follows: "That visitation with [M.H.B.] by [Respondent] . . . shall be at time and places set by [DSS] within its discretion." The trial court also suspended Respondent's visitation with M.H.B. pending review by DSS of psychological evaluations and a drug screen. By these orders, the trial court improperly gave DSS complete discretion to determine when, or if, Respondent could visit with M.H.B. Delegation of this judicial power was in error. Therefore, this case must also be remanded for clarification of Respondent's visitation rights. In light of our holding that the trial court's adjudication and disposition orders must be reversed and the case remanded, it is not necessary to address Respondent's remaining assignments of error.

Reversed and remanded.

Judges HUNTER and STROUD concur.