An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1474
NORTH CAROLINA COURT OF APPEALS

Filed:  3 June 2014

IN THE MATTER OF:                    Johnston County
H.B., H.C., N.D., B.D.               Nos. 11 JT 166-69


Appeal by respondent from orders entered 23 October 2013 by Judge Paul A. Holcombe, III, in Johnston County District Court. Heard in the Court of Appeals 28 April 2014.


> *Holland & O'Connor, P.L.L.C., by Jennifer S. O'Connor, for petitioner-appellee Johnston County Department of Social Services.*
>
> *Marie H. Mobley for guardian ad litem.*
>
> *Mercedes O. Chut for respondent-appellant mother.*


McCULLOUGH, Judge.


Respondent appeals from orders terminating her parental rights as to the minor children H.B. (born in 2001), H.C. (born in 2003), N.D. (born in 2008), and B.D. (born in 2009) (collectively "the juveniles").[1]  We affirm.

I.  Background

---

[1]The court also terminated the parental rights of H.B.'s biological father, B.C., and H.C.'s biological father, M.H.  The father of N.D. and B.D. (hereafter "Mr. D.") relinquished his parental rights on or about 14 August 2013.

The Johnston County Department of Social Services ("DSS") filed juvenile petitions on 2 December 2011, seeking adjudications of neglect and dependency as to each child.[2] The petitions alleged that respondent's husband ("Mr. D.") had returned to the home from prison in July 2011, having been convicted of sexually abusing his step-daughter, H.C., when she was six years old. Respondent had allowed Mr. D. to return to the home without engaging in sex offender treatment, in violation of her 2010 case plan. The petitions further alleged a series of domestic violence incidents between respondent and Mr. D. in the juveniles' presence between October and December 2011. When DSS attempted to take the juveniles into non-secure custody, respondent nearly drove her car into one of the vehicles containing her children. She then grabbed one social worker by the neck and arm and punched a second social worker in the face, all in front of the juveniles.

The district court adjudicated the juveniles neglected and dependent on 7 March 2012. It ceased reunification efforts as to respondent on 14 September 2012, and changed the juveniles' permanent plan to adoption by order signed 9 January 2013.

DSS filed petitions to terminate respondent's parental

---

[2]DSS filed an amended petition as to H.B. on 4 January 2012, adding information about her biological father.

rights on 6 February 2013, alleging three grounds for termination: (1) neglect; (2) lack of reasonable progress to correct the conditions that led to the juveniles' out-of-home placement during the twelve months that immediately preceded the petition's filing; and (3) failure to pay a reasonable portion of the juveniles' cost of care during the six months immediately preceding the petition's filing. N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2013). After a hearing on 25 September 2013, the court entered orders terminating respondent's parental rights on 23 October 2013. The court adjudicated the existence of each of the three grounds for termination alleged by DSS and concluded that terminating respondent's parental rights would serve the juveniles' best interests. Respondent filed timely notice of appeal from these orders.

## II. Discussion

On appeal, respondent argues that the trial court erred by (A) failing to conduct an inquiry as to whether respondent needed a guardian ad litem and (B) erroneously choosing to terminate her parental rights at the dispositional stage of the proceedings.

### A. Appointment of a Guardian Ad Litem

Respondent first claims the district court violated N.C.

Gen. Stat. § 7B-1101.1(c) (2011)[3] by failing to inquire *sua sponte* into the need to appoint a guardian ad litem ("GAL") for respondent in the termination proceedings. At the time of the termination hearing, N.C. Gen. Stat. § 7B-1101.1(c) authorized the appointment of a GAL on motion of a party, or the court's own motion, "if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest." N.C. Gen. Stat. § 7B-1101.1(c) (2011). Whether to inquire into a parent's need for a GAL is a decision left to the district court's sound discretion, based on the circumstances known to the court. *In re J.A.A. & S.A.A.*, 175 N.C. App. 66, 72, 623 S.E.2d 45, 49 (2005).

North Carolina defines "[i]ncompetent adult" as one who "lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, . . . similar cause or condition." N.C. Gen. Stat. § 35A-1101(7) (2013). By contrast,

---

[3]Respondent notes that N.C. Gen. Stat. § 7B-1101.1(c) was amended effective 1 October 2013 by 2013 N.C. Sess. Laws 129, § 25 (June 19, 2013), but cites the version in effect at the time of the termination hearing on 25 September 2013.

> [t]he phrase "diminished capacity," . . . is used primarily in the criminal law context and is defined as "[a]n impaired mental condition-short of insanity-that is caused by intoxication, trauma, or disease and that prevents a person from having the mental state necessary to be held responsible for a crime." However, our Court has also defined "diminished capacity" in the juvenile context as a "lack of 'ability to perform mentally.'"

*In re M.H.B.*, 192 N.C. App. 258, 262, 664 S.E.2d 583, 585-86 (2008) (citations omitted). "In other words, a person with diminished capacity is not incompetent, but may have some limitations that impair their ability to function." *In re P.D.R.*, __ N.C. App. __, __, 737 S.E.2d 152, 158 (2012).

On motion of respondent's counsel, the district court appointed GAL Scott Corl "to assist the [respondent] in representation in this matter" on 2 February 2012, prior to entering the adjudications of neglect and dependency on 7 March 2012. *See* N.C. Gen. Stat. § 7B-602(c) and (e) (2011).[4] On 7 May 2012, the court appointed respondent a new GAL, Aleta Ballard, replacing Mr. Corl. Respondent's GAL attended proceedings in this cause through a permanency planning review hearing scheduled for 15 June 2013. No further attendance by the GAL is

---

[4]Effective 1 October 2013, N.C. Gen. Stat. § 7B-602(c) was amended, and (e) was repealed by 2013 N.C. Sess. Laws 192, §§ 17, 41 (June 19, 2013).

reflected in the record on appeal; nor does the record indicate why her participation stopped.

By appointing a GAL merely to assist respondent, rather than to serve in a substitutive capacity, the district court exercised its then-existing authority under N.C. Gen. Stat. § 7B-602(c) and (e) to appoint a GAL for a parent with diminished capacity. *See In re P.D.R.*, __ N.C. App. at __, 737 S.E.2d at 158. We find nothing in the record to suggest respondent was incompetent.[5] Indeed, respondent acknowledges that the "[f]acts in the record" are suggestive of diminished capacity, rather than incompetency. She contends, however, that the district court's 23 October 2013 orders include "numerous findings which indicate the continuing presence of diminished capacity" at the time of the termination hearing. Because "[n]othing in the record indicates that [her] need for a GAL had lessened[,]" respondent argues that the "court's failure to conduct an inquiry on the need for a GAL is reversible error per se."

In 2013 N.C. Sess. Laws 129 (June 13, 2013), our General Assembly enacted amendments to Article 11 of the Juvenile Code

---

[5]Respondent's December 2011 psychological evaluation found "no indication . . . of delusions, thought disorder or hallucinations" and found respondent to be "alert and fully oriented" and possessed of "well developed" language skills, "logical and goal directed" thought processes, and good "powers of attention and concentration[.]"

which apply to all cases pending on or filed after 1 October 2013. 2013 N.C. Sess. Laws 129, §§ 32, 41. Section 32 of the law deleted the language in N.C. Gen. Stat. § 7B-1101.1(c) allowing the court to appoint a GAL for a parent with diminished capacity. Subsection (c) now provides as follows: "On motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent who is incompetent in accordance with G.S. 1A-1, Rule 17." N.C. Gen. Stat. § 7B-1101.1(c) (2013). The session law also repealed N.C. Gen. Stat. § 7B-1101.1(e), which listed the forms of assistance a GAL could provide to a parent. 2013 N.C. Sess. Laws 129, § 32.

As amended, N.C. Gen. Stat. § 7B-1101.1 no longer authorizes the appointment of a GAL of assistance for a parent with diminished capacity. The statute now contemplates only the appointment of a GAL of substitution for a parent who is incompetent, consistent with N.C. R. Civ. P. 17. N.C. Gen. Stat. § 7B-1101.1(c).

To the extent respondent challenges the district court's failure to inquire into her need for a GAL of assistance based on the evidence of diminished capacity, we conclude her appeal is moot. Article 11 of the Juvenile Code no longer authorizes the appointment of a GAL of assistance for a parent in a

termination proceeding. Because the amendments enacted by 2013 N.C. Sess. Laws 192 apply to any future proceedings in this cause, the district court would no longer have the authority to conduct the inquiry sought by respondent under N.C. Gen. Stat. § 7B-1101.1(c), if the cause were remanded. *Cf. Davis v. Zoning Board of Adjustment of Union County*, 41 N.C. App. 579, 582, 255 S.E. 2d 444, 446 (1979) (finding that "all questions raised have been rendered moot by the amendments to the Union County Zoning Ordinance").

To the extent respondent faults the court for failing to inquire into her competency, we find no abuse of discretion. There is no indication that respondent was incompetent at any time during these proceedings. Nor did DSS allege dependency as a ground for terminating her parental rights. *See In re S.R.*, 207 N.C. App. 102, 109, 698 S.E.2d 535, 540 (2010). Accordingly, this assignment of error is overruled.

## B. Termination of Parental Rights

Respondent next claims the district court erred at the dispositional stage of the proceedings by choosing to terminate her parental rights. We disagree.

After adjudicating the existence of one or more grounds for termination under N.C. Gen. Stat. § 7B-1111(a), the court must

determine at disposition "whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2013). Subsection 7B-1110(a) provides that in making this determination,

> In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a). "We review the trial court's determination that a termination of parental rights is in the best interest of the juvenile for an abuse of discretion." *In re S.R.*, 207 N.C. App. at 110, 698 S.E.2d at 541. "'Abuse of discretion exists when the challenged actions are manifestly unsupported by reason.'" *Id.* (quoting *Barnes v. Wells*, 165 N.C. App. 575, 580, 599 S.E.2d 585, 589 (2004)).

We reject as frivolous respondent's claim that the district court "completely bypass[ed] the dispositional phase" prescribed by N.C. Gen. Stat. § 7B-1110 (2013). A proceeding for termination of parental rights consists of an adjudicatory stage under N.C. Gen. Stat. § 7B-1109 (2013) and a dispositional stage under N.C. Gen. Stat. § 7B-1110 (2013). It is well established, however, that

> [t]he trial court need not conduct a separate and distinct hearing for each stage . . . and may hear adjudicatory and dispositional evidence concurrently, provided that it applies the appropriate standard of proof at each stage. Moreover, evidence heard or introduced throughout the adjudicatory stage, as well as any additional evidence, may be considered by the court during the dispositional stage.

*In re M.A.I.B.K.*, 184 N.C. App. 218, 224-25, 645 S.E.2d 881, 886 (2007) (internal citations and quotations omitted).

Here, at the conclusion of the evidence on adjudication, the court made clear that "[w]e are having a bifurcated hearing" and allowed the parties to present additional evidence and argument as to "the best interest inquiry" at disposition. The court granted DSS's request to consider the evidence from the adjudicatory stage of the hearing for purposes of disposition. It also received a written report prepared by the juveniles' GAL addressing each of the factors prescribed by N.C. Gen. Stat. §

7B-1110(a). Respondent declined the opportunity to offer dispositional evidence. After hearing the parties' arguments, the court proceeded "to consider and determine the best interest of the juvenile[s] under 7B-1110." It announced specific findings as to the juveniles' ages, their likelihood of adoption, whether termination would assist in accomplishing their permanent plan, and the juveniles' bond with respondent and their current caretakers. *See* N.C. Gen. Stat. § 7B-1110(a)(1)-(5). Upon "considering all the particular issues, including its previous findings," the court concluded that termination of respondent's parental rights "is in the best interest of these children[.]" The court's written orders reiterate these findings and conclusions in compliance with the statute. Respondent's suggestion that the court somehow circumvented the dispositional stage of the hearing is patently false.

Respondent also challenges the court's finding that the juveniles are adoptable. *See* N.C. Gen. Stat. § 7B-1110(a)(2). Specifically, she claims there is "no evidence" to support the following finding as to H.C.:

> The Court finds that a possible adoptive placement has been located for the juvenile and there is a likelihood that the juvenile will be adopted. The Court recognizes that

> the juvenile has had some issues that warrant her placement in therapeutic [foster] care[;] however these issues are not such that they would prevent the juvenile from being adopted.

We review dispositional findings only to determine if they "are supported by competent evidence," in which case "they are conclusive on appeal." *In re Weiler*, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003) (citations omitted).

The GAL reported to the court that each juvenile's "likelihood of adoption is high." The DSS caseworker, Elizabeth Gore, testified that H.C. was in a level 2 therapeutic foster home due to the mental health and behavioral issues she experienced as a victim of sexual abuse. Ms. Gore deemed it "very likely" that H.C. and her siblings would be adopted and averred that, "including [H.C.], the current [foster] homes are interested in providing permanency, if available." This evidence fully supports the court's finding.

Respondent also challenges the finding that five-year-old N.D. "has flourished since being in the same home as her siblings." The GAL reported that N.D. and B.D. were "adjusting well" to their foster home. Likewise, Ms. Gore described their relationship with the foster parents as follows:

> It's really strong. Even though [N.D.] and [B.D] have only been placed since July 20th,

they had been visiting with the family since March, so a relationship has developed over time with that [and] with the visits as well, but they have a close relationship. They have a bond. They refer to the foster parents as Mom and Dad.

Respondent's exception is overruled.

Finally, respondent challenges the findings that H.B. and H.C. "ha[ve] not asked about [respondent]" since their contact with her ceased in December 2012. Respondent points to the following testimony by Ms. Gore on this issue:

Q. When was the last time the children had a visit with [respondent]?

A. It was November of 2012.

Q. And since that time, have the children displayed any negative behaviors or inquired about [respondent] as a result of the visits being terminated?

A. The older children will ask questions. The younger children do not.

Assuming *arguendo* that these findings are not supported by the evidence, we conclude the error is harmless. *See generally In re Estate of Mullins*, 182 N.C. App. 667, 670-71, 643 S.E.2d 599, 601 (2007) ("In a non-jury trial, where there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because of other erroneous findings which do not

affect the conclusions.") (internal citation and quotation marks omitted). The court's findings under N.C. Gen. Stat. § 7B-1110(a)(4) acknowledged that "a bond did exist with [respondent]" for both H.B. and H.C. but noted that each child had "made progress since ceasing contact with [her.]" In light of the girls' strong bond with their prospective adoptive parents, the fact that H.B. and H.C. had asked Ms. Gore about respondent would not affect an assessment of their best interests.

Having reviewed each of respondent's arguments related to disposition, we hold that the district court did not abuse its discretion in concluding that termination of respondent's parental rights was in the best interests of the juveniles. The court's orders are hereby affirmed.

Affirmed.

Judges HUNTER, Robert C., and GEER concur.

Report per Rule 30(e).