An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-24
NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

IN THE MATTER OF:                          Iredell County
                                           Nos. 10 JA 208 & 213
    J.M. & J.M.,
        Minor children.


Appeal by respondent-mother and respondent-father from orders entered 1 July 2013 and 16 September 2013 by Judge Edward L. Hedrick, IV in District Court, Iredell County. Heard in the Court of Appeals 11 June 2014.

> *Lauren Vaughan, for petitioner-appellee Iredell County Department of Social Services.*
>
> *Assistant Appellate Defender J. Lee Gilliam, for respondent-appellant-mother.*
>
> *W. Michael Spivey, for respondent-appellant-father.*
>
> *Melanie Stewart Cranford, for guardian ad litem.*


STROUD, Judge.


Respondents appeal from a permanency planning review order awarding guardianship of their children Jack[1] and Jim to the

---

[1] Pseudonyms are used to protect the identity of the juveniles.

Keatings[2] and an order denying their motion to amend a prior order and motion for a new trial. For the following reasons, we affirm.

## I. Background

On 1 November 2010, the Iredell County Department of Social Services ("DSS") filed a petition alleging that ten-month-old Jack was an abused and neglected juvenile. The petition alleged that while respondents

> [w]ere traveling together with the minor child in the vehicle back from Yadkin County. The Respondent Father forced the Respondent Mother out of the vehicle on the side of the road at the county line after they had a domestic dispute during which she sustained a head injury. The Respondent Mother indicated that the Respondent Father was intoxicated and that he left with the minor child in the vehicle. The Respondent Mother indicated that the Respondent Father would not give the child to her. The Respondent Mother went to a stranger's residence where they called 911 and she reported the incident to law enforcement. She subsequently went to the maternal grandmother's residence.

The petition further alleged that

> [e]arly in the morning of 10/29/10, the Iredell County Sheriff's Department . . . found the ten-month-old minor child, Jack . . ., lying in the backseat of a vehicle asleep outside the residence. Deputies also found marijuana sitting in the front seat of

---

[2] The guardians will also be referred to by a pseudonym.

the same vehicle.

. . . .

The Department has had ongoing involvement with this family as well as the extended family. The Department previously received a report on 3/16/10 regarding domestic violence between the parents in the presence of the minor child. The family was found in need of services. Another report was received on 5/25/10 alleging the minor child had a burn mark on his forehead caused by a blunt. During this investigation, law enforcement confirmed that the Respondent Father drove the Respondent Mother and the minor child while intoxicated. Intensive Family Preservation was placed in the family's home twice, and the parents fired the preservation worker twice and told her not to return to their home. The Respondent Father did complete an intake assessment with New River Behavioral Healthcare but failed to follow through with any of the recommendations and all drug screens he submitted to for the Department were positive. He admitted to smoking marijuana daily since adolescence and indicated that he was not going to change. The Respondent Mother admits that there is ongoing domestic violence with the Respondent Father, that the Respondent Father drives the family around while under the influence and that the Respondent Mother drives with the minor child in the vehicle despite her lack of a driver's license. Despite her recognition of these issues, the Respondent Mother continues to enable the Respondent Father's behavior and does not protect the minor child.

Also, on 1 November 2010, DSS obtained nonsecure custody of Jack. On 15 February 2011, the trial court entered an adjudication order adjudicating Jack neglected based upon the

consent of respondents. On 27 June 2011, the trial court entered a disposition order continuing the custody of Jack with DSS and placing him with the Keating's family.

On 17 September 2011, respondent-mother gave birth to Jim. On 21 December 2011, DSS filed a petition alleging that he was a neglected and dependent juvenile. The petition was filed in response to physical altercations between respondents, as well as respondent-father's continued substance abuse; this same date, DSS took nonsecure custody of Jim. Jim was also placed with the Keatings. On 28 February 2012, the trial court entered an order adjudicating Jim neglected. On 16 August 2012, the trial court entered a disposition order retaining custody with DSS.

On 1 July 2013, the trial court entered a permanency planning review order ordering legal guardianship of the children be with the Keatings. On 8 August 2013, respondents filed a "MOTION FOR ADDITIONAL FINDINGS & NEW TRIAL[.]" On 16 September 2013, the trial court entered an order denying the respondents' motion. Respondents appeal.

## II. Guardianship Verification

Respondent-father contends that

> the trial court erred when it failed to follow the statutory mandate of N.C.G.S. §

7B-907(f) and N.C.G.S. § 7B-600(c) by failing to verify at the time guardians were appointed that they understood the legal significance of guardianship and had sufficient financial resources to provide adequate care for respondent father's minor child.

(Original in all caps.) Respondent-father concedes,

The statutes do not specify the manner or extent of the inquiry the trial court must make to verify that the guardians understand the legal significance of the appointment and that they have adequate resources to care appropriately for the juvenile.
This court has held that the trial court is not required to make any specific findings in order to make the verification. . . . In an unpublished opinion, one panel of this Court has held that the trial court is not required to conduct an inquiry of the proposed guardian at the hearing during which guardianship is awarded[,]

but ultimately argues without legal authority that

[o]ur statutes place the burden on the trial court of verifying that the guardians fully understand the legal significance of the responsibility they are undertaking, and have adequate resources to appropriately provide for the child. The relevant time to make this determination is at or near the time when a guardian is appointed. Here, the trial court relied upon a determination made a year earlier that the proposed guardians had adequate resources to provide appropriate care for the children. Obviously financial circumstances can undergo radical changes over the course of a year. A statement by the social worker that she did not know of any changes is not the

same as testimony that an inquiry was actually made into the current financial status of the proposed guardians.

Respondent-mother makes substantially the same argument contending that any verification previously done by the trial court was "stale."

North Carolina General Statute § 7B-600(c) states that

> (i)f the court appoints an individual guardian of the person pursuant to this section, the court shall verify that the person being appointed as guardian of the juvenile understands the legal significance of the appointment and will have adequate resources to care appropriately for the juvenile.

N.C. Gen. Stat. § 7B-600(c) (2011). North Carolina General Statute § 7B-907(f) states that

> [i]f the court determines that the juvenile shall be placed in the custody of an individual other than the parents or appoints an individual guardian of the person pursuant to G.S. 7B-600, the court shall verify that the person receiving custody or being appointed as guardian of the juvenile understands the legal significance of the placement or appointment and will have adequate resources to care appropriately for the juvenile.

N.C. Gen. Stat. § 7B-907(f) (2011).[3]

---

[3] North Carolina General Statute § 7B-907 was "[r]epealed by Session Laws 2013-129, s. 25, effective October 1, 2013, and applicable to actions filed or pending on or after that date." N.C. Gen. Stat. § 7B-907 (2013). Because the applicable order here was entered on 1 July 2013, North Carolina General Statute

This Court is not required to "make any specific findings in order to make the verification" and may use prior evidence such as a DSS "home study" in complying with the requirements for verification. *In re J.E.*, 182 N.C. App. 612, 616-17, 643 S.E.2d 70, 73, *disc. review denied*, 361 N.C. 427, 648 S.E.2d 504 (2007). The trial court had previously found in an August 2012 order entered after a May 2012 hearing:

> 30. That Ms. [Keatings] is a teacher's assistant. Mr. [Keatings] runs a construction business and just opened a tire shop.
>
> 31. That the Court has verified that . . . [the Keatings] understand the legal significance of the appointment of guardianship and have adequate resources to care appropriately for the minor child and have provided for the minor child and his brother, Jack, since coming into care, without assistance until March of 2012, when they became licensed foster parents. They have received WIC and Medicaid and the parents have provided a bag of diapers, several sets of clothes, some juice and milk. The [Keatings] intend to add a room to their home with payments they will receive. They have been able to adequately raise their own two children, an 18-year-old son and 11-year-old daughter.

§ 7B-907(f) still applies.

Then, in May of 2013, at the permanency planning review hearing, Ms. Melissa Price, a DSS social worker testified:

> Q. Now, I know that we've had the [Keatings] here previously and completed the inquiry regarding guardianship on previous occasions, that guardianship has been recommended as a plan. Have you spoken with the [Keatings] leading up to today's court date to make them aware of your recommendation and to talk to them again about their amenability to take on guardianship of these two boys?
>
> A. Yes, I have. The [Keatings] are in constant contact with me about the children, about how they are doing, about their desire for guardianship, yes.
>
> Q. Okay. And did you talk to them about whether anything had changed with regard to their situation and their willingness to be guardians for these children?
>
> A. Nothing has changed, they are -- they are still very willing.
>
> Q. Okay. And to your knowledge, has anything changed with regard to their situation that would affect their ability to provide for these children's needs --
>
> A. Not at all, no.
>
> Q. -- in the guardian role?
>
> A. Not at all.

In the permanency planning review order based upon the May 2013 hearing, the trial court found:

23. That guardianship with the [Keatings] should be established today.

24. That the Court made a guardianship inquiry of the [Keatings] on May 23, 2012 per North Carolina General Statute 7B-600 and verified that they understood the appointment of guardianship, have adequate resources to provide for the minor children and have a consistent willingness and ability to serve in that role.

We therefore conclude that the trial court complied with the requirements of North Carolina General Statutes §§ 7B-600(c) and 7B-907(f). *See* N.C. Gen. Stat. §§ 7B-600(c), - 907(f). This argument is overruled.

### III. Guardian Ad Litem

On 3 November 2010, the trial court ordered respondent-mother be appointed a guardian ad litem ("GAL") "in response to the request made by . . . Respondent Parent's attorney[.]" On 1 February 2012, the trial court entered an order stating respondent-mother's GAL was relieved because respondent mother's attorney "believes a GAL for her is not needed." Respondent-mother challenges the trial court's release of her GAL. Respondent-mother frames her argument as one judge "overruling" another in the release of her GAL and argues that a "substantial change of circumstances" is required in order for her GAL to be

released, but such arguments are not persuasive in light of the applicable law.

Pursuant to North Carolina General Statute § 7B-602(c),

> On motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent in accordance with G.S. 1A-1, Rule 17, if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest. The parent's counsel shall not be appointed to serve as the guardian ad litem.

N.C. Gen. Stat. § 7B-602(c) (2011).[4] "Because N.C.G.S. § 7B-602(c) employs the term may, a trial court's action pursuant to this statute is discretionary, and our review is limited to a determination of whether the trial court abused its discretion. A trial court abuses its discretion when its decision is manifestly unsupported by reason." *In re M.H.B.*, 192 N.C. App. 258, 261, 664 S.E.2d 583, 585 (2008) (citations and quotation marks omitted). In considering another statute, in *In re P.D.R.*, this Court stated that "throughout the neglect and dependency and termination proceedings" a GAL previously appointed must remain "as long as the conditions that

---

[4] "Session Laws 2013-129, s. 41, made the amendment to this section by Session Laws 2013-129, s. 17, applicable to actions filed or pending on or after October 1, 2013[,]" therefore, the amendment is not applicable to this case.

necessitated the appointment of a GAL still exist[.]" ___ N.C. App. ___, ___, 737 S.E.2d 152, 159 (2012).

After reviewing the record, we are satisfied that the trial court did not abuse its discretion in releasing respondent-mother's GAL. The trial court found in an unchallenged 7 September 2011 order that "Respondent Mother made an appointment for a psychological evaluation with New River. New River conducted an intake assessment and determined that a psychological evaluation was not necessary, but that Respondent Mother would benefit from individual counseling related to her environment and educational deficiencies." Furthermore, both the appointment and the dismissal of a GAL were made at the request of respondent-mother's own attorney. This argument is overruled.

## IV. Conclusion

For the foregoing reasons, we affirm.

AFFIRMED.

Judges CALABRIA and DAVIS concur.

Report per Rule 30(e).